810 So.2d 906 (2002)
VERIZON FLORIDA, INC., Appellant,
v.
E. Leon JACOBS, Jr., et al., Appellees.
No. SC01-323.
Supreme Court of Florida.
February 14, 2002.
*907 Marvin E. Barkin and Marie Tomassi of Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., St. Petersburg, FL; and Kimberly Caswell, Tampa, FL, for Appellant.
Harold McLean, General Counsel, and Christiana T. Moore, Associate General Counsel, Florida Public Service Commission, Tallahassee, FL, for Appellees.
Raoul G. Cantero, III of Adorno & Zeder, P.A., Miami, FL, for BellSouth Telecommunications, Inc., Amicus Curiae.
PER CURIAM.
Verizon Florida Incorporated has filed this appeal from Order No. PSC-01-0097-DS-TL of the Public Service Commission, concerning imputation of telephone directory advertising revenues[1]. We have jurisdiction. See art. V, § 3(b)(2) Fla. Const. We reverse the decision of the Public Service Commission for the reasons expressed below.

BACKGROUND
Verizon Florida ("Verizon") is a local exchange carrier licensed under chapter 364, Florida Statutes (2001) to provide telecommunications services in certain areas of Florida. Verizon, as a local exchange company, is required to distribute a white pages directory listing its customers' telephone numbers. See Fla. Admin. Code Rule 25-4.040. Verizon contracts with Verizon Directories ("Directories"), its corporate affiliate, to publish the required white pages directories. Directories also publishes and sells yellow pages directory advertising. Under the contract, Verizon bills and collects yellow pages advertising revenue for Directories by including the charges in its telephone bills. Directories pays Verizon for these services and these payments are included in Verizon's regulated revenues. However, Verizon does not include in its regulated revenues the money it bills and collects for Directories or any other company for which it bills and collects.
In 1995, the Legislature enacted section 364.051, Florida Statutes (1995), relating to price regulation of local exchange telecommunications companies. See ch. 95-403, § 9, Laws of Fla. Under section 364.051, a telecommunications company could elect to cap its rates for basic services. In exchange for this, "price-capped" companies are exempted from rate base, rate of return regulation, and the requirements of several statutes,[2] including section 364.037, Florida Statutes (2001), regarding the inclusion of directory advertising revenues for purposes of rate setting. See § 364.051(1)(c), Fla. Stat. (2001). Effective January 1, 1996, Verizon elected to operate under this price cap regulation scheme.
On October 13, 2000, Verizon requested a declaratory statement asking the Commission to declare that it is not required to pay regulatory assessment fees on the yellow pages advertising revenues that are earned and booked by Directories. In its petition, Verizon argued that it should not *908 be required to pay such fees because they are earned and booked by an affiliate, Directories. Verizon contended that section 364.037, which directs the Commission to consider revenues derived from advertisements in telephone directories when establishing telecommunications rates, no longer applies to Verizon because as a "price-cap" company it is exempt under section 364.051.
The Commission, in Order No. PSC-01-0097-DS-TL, disagreed with Verizon, concluding that it was allowed to impute the yellow pages directory revenues booked by Directories to Verizon. In support of this proposition, the Commission cited its earlier order, In re Investigation into Regulatory Assessment Fee Calculations for 1985 and 1986 for United Telephone Company of Florida, 89 F.P.S.C. 6-224 (1989) (Order No. 21364) issued June 9, 1989, in Docket No. 880149-T L. In that order, the Commission imputed revenues associated with the affiliate company to the local telecommunications company, even though the revenues were recorded on the books of the affiliate. Based on this previous order, the Commission explained here that it did not matter that Directories did not meet the definition of a telecommunications company, so long as the service being provided was one that "Verizon [was] required to provide by virtue of Verizon being certificated to provide basic local telecommunications service." Order No. PSC-01-0097-DS-TL at 4. The Commission found that in the instant case, publishing the yellow pages advertising did not appear to be a separate function from publishing the white pages. See Order No. PSC-01-0097-DS-TL at 7.

APPEAL
On appeal, Verizon contends that the Commission incorrectly interpreted section 364.336, Florida Statutes (2001), when it concluded that Verizon had to pay a regulatory assessment fee on the yellow pages advertising revenues it books and collects for Directories. Verizon argues that the Commission, in its order, failed to give effect to the plain meaning of section 364.336, which would preclude the Commission from including Directories' revenues in the calculation of Verizon's regulatory assessment fees.
An agency's interpretation of the statute it is charged with enforcing is entitled to great deference. See BellSouth Telecommunications, Inc. v. Johnson, 708 So.2d 594, 596 (Fla.1998). Further, a court will not depart from the contemporaneous construction of a statute by a state agency charged with its enforcement unless the construction is "clearly erroneous." PW Ventures, Inc. v. Nichols, 533 So.2d 281, 283 (Fla.1988). Verizon contends that the Commission's interpretation of section 364.336, Florida Statutes, is clearly erroneous. We agree.
Section 364.336, Florida Statutes, states in pertinent part: "[E]ach telecommunications company licensed or operating under this chapter ... shall pay to the commission... a fee that may not exceed 0.25 percent annually of its gross operating revenues derived from intrastate business."
Under Florida's rules of statutory construction, the phrase "its gross operating revenues" must be given its plain and ordinary meaning. See Citizens v. Florida Pub. Serv. Comm'n, 425 So.2d 534 (Fla. 1982). There is no need to resort to other rules of statutory construction when the language of the statute is unambiguous and conveys a clear and ordinary meaning. See Starr Tyme, Inc. v. Cohen, 659 So.2d 1064 (1995).
The pertinent language of section 364.336 is plain when it states that telecommunications companies, operating under chapter 364, are only required to pay regulatory assessment fees based on a percentage *909 of their own gross operating revenues derived from intrastate business. In its order, the Commission imputes Directories' revenues to Verizon for purposes of regulatory assessment fee calculation. Yet, nothing in the plain language of section 364.336 serves as a basis for allowing the Commission to impute revenues to Verizon from Directories in the regulatory assessment fee calculus. Accordingly, we hold that the Commission does not have the authority under section 364.336 to impute Directories' yellow pages advertising revenues to Verizon.
It appears that Verizon's practice of imputing affiliate revenues is based on the intent of section 364.037,[3] to "secure most of the benefits of such profits for telephone companies' ratepayers." In re Investigation into the Regulatory Assessment Fee Calculations for 1985 and 1986 of United Telephone Company of Florida, 89 F.P.S.C. 5:83 (1989) (Order No. 21171). As Commissioner Baez pointed out in his dissent from the instant order, the publication of a directory by a company which is not a telecommunications company is not subject to regulation by the Commission, but for the mandate of section 364.037. Here, Verizon is exempt from the requirements of section 364.037 by virtue of its status as a "price-cap" company. See § 364.051(1)(c). Since Verizon's yellow pages advertising revenues are exempt from section 364.037's rate of return calculation, the basis for their imputation no longer exists. Accordingly, section 364.037 offers no basis to impute Directories' yellow pages advertising revenues to Verizon.

CONCLUSION
Accordingly, we reverse the order of the Commission. We hold that the Commission *910 erred in declaring that yellow pages advertising revenues that are billed and collected by Verizon, but which are booked by Directories, should continue to be imputed to Verizon for purposes of regulatory assessment fee calculation.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS, and QUINCE, JJ., concur.
NOTES
[1] In re Petition by Verizon Florida, Inc. for Declaratory Statement, 1 F.P.S.C. 1:201 (2001).
[2] Section 364.051 expressly exempts price-cap companies from sections 364.03, 364.035, 364.037, 364.05, 364.055, 364.14, 364.17, and 364.18, Florida Statutes (2001).
[3] Section 364.037, entitled "Telephone directory advertising revenues," provides the following:

The commission shall consider revenues derived from advertising in telephone directories when establishing rates for telecommunications services. When establishing such rates, the gross profit from all directory advertising in the local franchise area of a telecommunications company shall be allocated between the regulated portion and the nonregulated portion of its operation as provided in this section.
(1) The gross profit derived from directory advertising to be included in the calculation of earnings for ratemaking purposes shall be the amount of gross profit derived from directory advertising during the year 1982 adjusted, for each subsequent year, by the Consumer Price Index published by the United States Department of Commerce and by customer growth or the amount of gross profit actually derived from directory advertising in the local franchise area for the year, whichever is less.
(2) The gross profit derived from directory advertising to be allocated to the nonregulated operation of a company shall be the gross profit which is in excess of the adjusted 1982 amount determined in accordance with subsection (1).
(3) For the purpose of this section, the amount of gross profit of a company from directory advertising for the year 1982 is the actual gross profit derived from such advertising for that year. If, however, the expense to a company to furnish directories in 1982 exceeded 40 percent of the gross revenue derived from its directory advertising, the 1982 level of gross profit shall be adjusted to reflect a cost of 40 percent of its 1982 gross revenue. This adjusted 1982 gross profit level shall be utilized in lieu of actual gross profit for 1982 when making the calculations in subsection (1).
(4) Any profit associated with providing directory advertising service outside the franchise area of a company may not be considered when determining gross profit derived from directory advertising for ratemaking purposes. Any investment or expenses associated with providing directory advertising service outside its franchise area may not be recovered through rates for telephone service.
(5) Notwithstanding any provision of this section to the contrary, no less than two-thirds of the total gross profit of a company from directory advertising within its local franchise area for any year shall be included in the regulated portion of its operation when establishing rates.