KLEIN, J.
Appellant owns a home on a few acres with a pond about 90 feet wide, 120 feet long, and ten feet deep. When Martin County began operating a well it had drilled next to appellant’s property, it caused all of the water to be drained from the pond. Appellant alleged in this administrative proceeding that South Florida Water Management District should not have issued a permit for the well, because of the adverse affect on his pond. His petition was denied, but we reverse.
The facts, which are not disputed, begin with the construction of this home in 1980 by the original owner who testified that the pond was created at that time in order to raise fish. A berm was constructed around the pond in order to prevent water from overflowing. The pond had fish in it when appellant purchased it in 1994 and he has restocked it. The operation of Martin County’s well resulted in the water being drained from appellant’s pond.
Appellant filed a petition for administrative hearing challenging the permit issued to Martin County by the District. The District adopted the judge’s findings and conclusions that, notwithstanding the adverse effect on appellant’s pond, the permit was properly issued. We reverse because the District misinterpreted its rules. § 120.68(7)(e)(2), Fla. Stat. (2002).
Rule 40E-2.301(f) of the Florida Administrative Code, which applies to wells, provides:
Conditions for Issuance of Permits.
(1) In order to obtain a permit, permit renewal, or permit modification under this chapter, an applicant must give reasonable assurances that the proposed water use at the time the permit application is deemed complete:
[[Image here]]
(f) Will not interfere with presently existing legal uses ... (Emphasis added).
The District determined that the pond was not a “presently existing legal use” within the meaning of this rule.
Section 1.8 of the Basis of Review for Water Use Applications Within the South Florida Water Management District, (which is incorporated into the District’s rules by reference through rule 40E-2.091, Florida Administrative Code), defines “existing legal use” of water as follows:
A water use that is authorized under a District water use permit or is existing and exempt from permit requirements.
The District conceded that no permit is necessary for this pond. The District, however, concluded that the above definition of “existing legal use” should be read as “existing and [expressly] exempt from permit requirements.” If that had been the intention of the rule drafters, it would have been a simple matter to use the term “expressly” or to state with more specificity the exemptions. The definition, however, is clear and does not support the District’s interpretation.
The District argues that deference should be given to its interpretation of the statute or rule it is charged with enforcing, Verizon Fla., Inc. v. Jacobs, 810 So.2d 906 (Fla.2002); however, that principle does not apply where, as in this case, the statute or rule is “unambiguous and conveys a clear and ordinary meaning.” Id. at 908; *547 Starr Tyme, Inc. v. Cohen, 659 So.2d 1064 (Fla.1995).
The District also concluded that appellant was not entitled to relief because of section 3.6 of the Basis of Review which provides:
The issuance of a permit shall be denied if the withdrawal of water would cause an unmitigated adverse impact on an adjacent land use that existed at the time of permit application or that exists at the time of an application for permit modification. Adverse impact on land uses include:
A. Significant reduction in water levels in an adjacent surface water body, including impoundments, to the extent that the designed junction of the water body is impaired ... (Emphasis added).
Impoundment is defined as “any lake, reservoir, or other containment of surface water occupying a depression or bed in the earth’s surface and having a discernable shoreline.” § 373.019(8), Fla. Stat. (2002) and section 1.8 of the Basis of Review. The District agreed that this pond was an impoundment, but concluded that the “designed function” had not been impaired. The agency came to that conclusion based on its expert speculating, with no knowledge of the facts, that this was an excavation made solely to avoid having to bring in fill to raise the level of the house. He advanced this theory based on the fact that the house was built on fill one or two feet above ground level. The expert conceded, however, that the designed function was subsequently changed to fish pond.
Because it was undisputed that the fish pond was a designed function, the possibility that the original reason for the excavation may have been for some other purpose is irrelevant under section 3.6 of the Basis of Review. Section 3.6 does not say “original designed function.” Even if it had been relevant, the testimony of the District’s expert, who admitted he was speculating, was not competent substantial evidence to support a finding that it was done solely to raise the house. As we noted earlier, the original owner testified it was solely for the purpose of having a fish pond, and this was not disputed.
The District’s conclusion that the permit should be granted is therefore inconsistent with its own rules and unsupported by substantial competent evidence. §§ 120.68(7)(e)(2) and 120.68(7)(b), Fla. Stat. (2002).[1] Reversed.
GUNTHER and GROSS, JJ., concur.

. This will not necessarily result in Martin County’s well being shut down. The ALJ found that appellant's pond could be lined with a naturally occurring clay known as ben-tonite, which would solve the problem with no harmful effects.