SALTER, J.
Trust Care Health Services, Inc. appeals the denial of its application for a change in ownership of a licensed home health agency by the Agency for Health Care Administration (AHCA). We affirm.

*14
Facts

In May 2006, a licensed Florida home health agency known as All Med Network Corp. was terminated by the Medicare program for site visit deficiencies. AHCA revoked All Med’s license for the same reasons five months later.[1] At the relevant times, Roberto Marrero was All Med’s administrator and vice president. On the record before us, Marrero was not the subject of any personal administrative or disciplinary action relating to All Med’s termination from Medicare and the license revocation by AHCA.
In August 2007, Trust Care (an existing home health agency) filed an application for change of ownership based on Marre-ro’s purchase of all of the issued and outstanding stock of Trust Care. The printed application form required “yes or no” answers to these questions:
9(c) Has the applicant, owner or any individual having 5% or more financial interest been excluded, suspended, terminated or involuntarily withdrawn from participation in Medicare, Medicaid in any state or any other governmental or private health care/insurance program? _Yes_No
If yes, enclose the following information: the full name of the person, the position held and a description/explanation of any exclusions, permanent suspensions, terminations or involuntary withdrawals from any of the above listed programs. Proof of compliance with the requirements for disclosure of ownership and control interest under the Medicare or Medicaid programs may be accepted in lieu of this submission.
9(d) Has the applicant, owner or any individual having 5% or more financial interest previously been found by any licensing, certifying or professional standards board to have violated the standards or conditions that relate to home health-related licensure or certification, or to the quality of home health-related services provided? _Yes_No
If yes, enclose the following information: the full name of the person, the position held and a written description/explanation of any violations and the actions taken by the relevant board.
Trust Care, through Marrero, answered each of these questions “no.” After a review of the application, AHCA sent Trust Care an “omission letter” describing corrections, omissions, or revisions necessary to complete the application. Under section 408.806(8)(b), Florida Statutes (2007), the requested information “must be filed with the agency within 21 days after the agency’s request ... or the application shall be deemed incomplete and shall be withdrawn from further consideration and the fees shall be forfeited.” The omission letter identified two items that were subsequently remedied by Trust Care and are not at issue here. The omission letter also asserted that Marrero’s responses to items 9(c) and 9(d) were incomplete. As to 9(c), AHCA stated “Mr. Marrero was a controlling interest of All Med Network Corp. at the time their Medicare was terminated. Please provide the explanation for the exclusion as requested in item 9c.” As to 9(d), AHCA stated “As a corporation director and an administrator, Mr. Marrero was previously found to have violated conditions that relate to home health licen-sure. Please provide the explanation for the violations as requested in item 9d.”
*15 Through its attorney, Trust Care replied that its answers regarding items 9(c) and (d) were “legally and factually accurate in response to the specific wording of the application's question.” Regarding item 9(e), Trust Care further stated:
The “owner” of 100% of the stock in this matter is Roberto Marrero. Roberto Marrero has never received any of the sanctions requested of him in Q. 9c. A facility for which Roberto Marrero was the former Administrator at [sic] was terminated from the Medicare/Medicaid program based upon site-visit deficiencies. He did not own any stock and as such could not have a “controlling interest” as you indicate.
Regarding item 9(d), Trust Care also replied:
The “owner” of 100% of the stock in this matter is Roberto Marrero. Roberto Marrero, personally, as the question states “owner,” has never received any of the sanctions requested of him in Q. 9d. A facility for which Roberto Marre-ro was the former Administrator at [sic] voluntarily surrendered its AHCA-HHA license based upon site-visit deficiencies. However, this information is not elicited in Q. 9d for which you are referring.
In response, AHCA issued a “notice of intent to deny” regarding the application for a change of ownership. The pertinent statutes and rules cited by AHCA for the action included section 408.815(l)(a) and (e), Florida Statutes (2007):
(1) In addition to the grounds provided in authorizing statutes, grounds that may be used by the agency for denying and revoking a license or change of ownership application include any of the following actions by a controlling interest:
(a) False representation of a material fact in the license application or omission of any material fact from the application.
[[Image here]]
(e) The applicant, licensee, or controlling interest has been or is currently excluded, suspended, or terminated from participation in the state Medicaid program, the Medicaid program of any other state, or the Medicare program.
Trust Care requested a formal administrative hearing regarding the matter. An administrative law judge considered mem-oranda of law and undisputed facts submitted by Trust Care and AHCA in lieu of a formal hearing and oral argument. The final administrative order upheld AHCA’s application of the applicable statutes and denial of Trust Care’s change of ownership application. The order included this analysis:
4. Trust Care argues that Section 408.815(1) applies only to controlling interests of the current applicant or licensee. Marrero was the controlling interest of All Med at the time All Med’s Medicare participation was terminated. All Med is neither the applicant nor licensee here. Trust Care therefore maintains that Marrero’s former status as a controlling interest of All Med is not within the reach of the statute for purposes of Trust Care’s CHOW [change of ownership] application. Trust Care takes the position that Mar-rero personally would have had to have been terminated from Medicare in order for Section 408.815(1) to apply to Trust Care’s CHOW application.
5. Trust Care’s interpretation does not comport with the plain meaning of the language in Section 408.815(1). The statute clearly states that certain past actions by a controlling interest may serve as a basis for denial of a license or CHOW. The disqualifying actions include the situation in which the “applicant, licensee, or controlling interest *16 has been ... terminated from participation in ... the Medicare program [emphasis supplied].” This language lists “applicant,” “licensee” and “controlling interest” in the alternative. Thus the statutory language provides that the termination of any one of those entities from Medicare supports a denial of the application. It does not require, for purposes of this termination, that the controlling interest be associated with the current applicant or licensee at the time the controlling interest was terminated. Nothing in the statute states that a denial of an application based on the termination of a controlling interest from Medicare is restricted to a Medicare termination that took place when the controlling interest was the controlling interest of the applicant. The statute allows a past termination of an applicant’s controlling interest from participation in Medicare to serve as grounds for denial of that applicant’s application whether or not the controlling interest was associated with the applicant when the termination occurred.
6. The Agency’s interpretation is not unreasonable. As the Agency points out, the interpretation offered by Trust Care would allow a 100% owner of a home health agency to commit Medicare fraud, be terminated from Medicare, and then simply form a new corporation as the 100% owner and be eligible for licen-sure. It is precisely this type of activity that Section 408.815(1) appears to have been intended to prevent.
Trust Care’s appeal to this Court followed.

Analysis

The starting point for this type of purely interpretive, administrative issue is our deference to an agency’s interpretations of law on matters within the agency’s legislatively-defined scope of authority and expertise. Pub. Employees Relations Comm’n v. Dade County Police Benevolent Ass’n, 467 So.2d 987 (Fla.1985). An agency develops important technical and practical expertise in the area it oversees. Rizov v. State, Bd. of Professional Engineers, 979 So.2d 979 (Fla. 3d DCA 2008). For these reasons, we will affirm an agency’s interpretation of law regarding such a matter unless it is shown to be “clearly erroneous.” Verizon Florida, Inc. v. Jacobs, 810 So.2d 906, 908 (Fla.2002).
In the present case, the record includes an affidavit from the Deputy Secretary, Division of Health Quality Assurance of AHCA. The Deputy Secretary stated under oath that she “was involved in the drafting and review of the revision of Florida Statutes related to health care facility regulation including Chapter 408 Florida Statutes.” Her affidavit continues:
[W]ith regard to Section 408.815(l)(e) Florida Statutes (2007), Affiant states that part of the intent of this legislation was to ensure that individuals that have been controlling interests in licensed entities that were terminated from the Medicaid or Medicare programs do not receive a license from AHCA to operate a new entity... .Affiant further states that Section 408.815(l)(e) Florida Statutes (2007) has been consistently interpreted by AHCA to authorize the Agency to deny a license application from an applicant where the controlling interest of the applicant was the controlling interest of an entity that previously was terminated from the Medicare program.
The Deputy Director’s affidavit is further supported by the scant legislative history of the statute as amended in 2006. The staff analysis accompanying the House bill ultimately creating Part II of Chapter 408 noted that the legislation allows AHCA to impose a license denial for regulatory violations affecting resident *17 health, safety or welfare. See Fla. H.R. Comm, on H.B. 7141 (2006) Staff Analysis (rev.Apr.20, 2006).
There is no doubt that the statute could have been written in a manner that would more precisely describe the rules of attribution applied by AHCA.[2] Two things are very clear, however: (1) Marrero had a “controlling interest” in All Med when it was terminated by Medicare and its license was revoked by AHCA, and (2) fifteen months later, when Trust Care applied for a change of ownership to permit Marrero to own 100% of Trust Care and thus control its license, Marrero was still terminated from continued participation in Medicare through All Med. In other words, the conditions that resulted in All Med’s loss of license and Medicare participation — conditions which arose when Marrero controlled All Med as its administrator and vice president — were never remedied or explained to the satisfaction of AHCA and Medicare.
The Legislature also included a catch-all requirement for applicants to completely disclose all material facts in an application. In a change of ownership application, the proposed new owner or controlling interest is actually the focus of AHCA’s attention. The applicant itself (here, Trust Care) holds an active license at the time of the application, and the question is whether the new person or entity should be allowed to obtain and exercise control. Section 408.815(l)(a) authorizes AHCA to deny an application for false representation or omission of a material fact in an application. Marrero, as proposed owner and controlling interest in the applicant, could have disclosed his involvement in All Med in the initial application. He did not do so. When AHCA consulted its own data and found the connection, it invited him to complete Trust Care’s disclosure by explaining the All Med problems and explaining why Marrero’s control of that entity was omitted.
Instead of opting for complete candor, Trust Care — with Marrero’s obvious approval as 100% owner — responded with a technical statutory argument and no further explanation of the disturbing events at All Med in 2006. Marrero and Trust Care continue to offer nothing in the record to assuage a regulator’s obvious and legitimate concern. If the problems at All Med occurred because of unauthorized acts or omissions by subordinates and could not have been prevented by Marrero, any fair-minded person should conclude that Mar-rero’s proposed acquisition of the Trust Care license is entitled to a new look. But the sudden[3] Medicare termination and voluntary surrender of All Med’s home health agency license because of a site visit by regulators, occurring when Marrero was administrator and vice president, is not some mere bagatelle.
The fitness of license applicants, particularly those involving “regulation of *18 occupations which are engaged in by privilege rather than right and which are potentially injurious to the public welfare,” is subject to agency discretion that may extend beyond the express standards and guidelines articulated by the legislature. Astral Liquors, Inc. v. State, Dep’t. of Bus. Regulation, Div. of Alcoholic Beverages & Tobacco, 432 So.2d 93, 95-96 (Fla. 3d DCA 1983), decision approved by 463 So.2d 1130 (Fla.1985). Home health agencies provide nursing care, therapy, health aide services, dietetics and nutrition assistance, and medical supplies[4] to a vulnerable population of clients.[5] For this additional reason, AHCA did not commit clear error or abuse its broad discretion in requiring Trust Care and Marrero to be more forthcoming as part of the application and review process (and in denying Trust Care’s application when it failed to do so).
Affirmed.
GERSTEN, J., concurs.

. Trust Care’s response to AHCA in the administrative proceeding stated that All Med's license “was physically and voluntarily surrendered’’ by All Med on the same day as the AHCA site visit in May 2006. The effective date of the formal revocation followed in October of that year.

. Federal tax and other statutes often include elaborate tests for direct and indirect control, including control through multiple layers of entities and shareholders. In this case, AHCA plainly applies a broad and less detailed test for attribution of a corporate entity’s past license and Medicare problems to a controlling interest. But this interpretation is reasonable in light of AHCA's statutory duties and when read in pari materia with the admonition against "omission of any material fact from the application."

. According to the record, the federal Center for Medicare and Medicaid Services (CMS) terminated All Med from the Medicare program for deficiencies on May 16, 2006. Trust Care’s written response to AHCA requests for admission, executed under oath by Marrero, states that All Med’s "AHCA license was physically and voluntarily surrendered by the provider on the day of the AHCA site visit in May 2006.”

. "Home health services” are defined in section 400.462(14), Fla. Stat. (2007).

. A "client” for a home health agency means "an elderly, handicapped, or convalescent individual who receives companion services or homemaker services in the individual's home or place of residence.” § 400.462(6), Fla. Stat. (2007).