# Third District Court of Appeal

## State of Florida

Opinion filed October 15, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-2510
Lower Tribunal No. 12-2253
_____

**Harold Crane,**
Appellant,

vs.

**Lifemark Hosp. of Fla., Inc., etc.,**
Appellee.

An Appeal from the Florida Commission on Human Relations.

Matthew W. Dietz, for appellant.

Lash & Goldberg LLP and Martin B. Goldberg and Lorelei J. Van Wey, for appellee.

Before SHEHERD, C.J., and LAGOA and LOGUE, JJ.

LOGUE, J.

We review the decision of the Florida Commission on Human Relations which held that it lacked jurisdiction to adjudicate a complaint filed by Harold Crane, who is deaf, against Lifemark Hospital of Florida, Inc., for failure to provide an American Sign Language interpreter. The issue on appeal is whether a private hospital in Florida constitutes a "public accommodation" under the Florida Civil Rights Act of 1992 by virtue of having a cafeteria within its premises. Based on express language in the Act that excludes cafeterias in hospitals from the provisions of the Act, we agree with the Commission that it does not have jurisdiction. Accordingly, we affirm the Commission's determination that it lacked jurisdiction of this dispute.

## FACTS AND PROCDEDURAL BACKGROUND

In his complaint, Crane alleged he is deaf, does not speak, and that his primary language is American Sign Language. During his four-day admission to the Hospital, Crane alleges, the telecommunications device for the deaf provided to him by the Hospital was inadequate, and although he requested an interpreter, the Hospital failed to provide one until an hour before he was discharged. As a result, at various points during his stay, he was unable to understand or communicate with the doctors and nurses who treated him. Particularly pertinent to the legal issue on appeal, Crane alleged the Hospital "is a covered accommodation by the presence

2

of a food service establishment including the hospital cafeteria, and snack bar on the first floor called Out Takes, as well as vending machines."

After his discharge, Crane filed the complaint at issue. The Commission dismissed the complaint for lack of jurisdiction. It determined that a private hospital is not a public accommodation covered by the Act. Crane timely appealed.

**ANALYSIS**

The Florida Civil Rights Act of 1992 prohibits discrimination based on handicap in places of public accommodation. In this regards, it reads:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this chapter, without discrimination or segregation on the ground of race, color, national origin, sex, handicap, familial status, or religion.

§ 760.08, Fla. Stat. (2011).

As the language quoted above indicates, however, the provisions of the act extend only to a "place of public accommodation." The Act defines "public accommodation" by listing specific types of establishments and by including a general category at the end of its definition. The establishments specifically listed do not include hospitals. Crane, however, relies on the general provision at the end of the definition. The definition reads, in pertinent part:

> "Public accommodations" means places of public accommodation, lodgings, facilities principally engaged in selling food for consumption on the premises, gasoline stations, places of exhibition or entertainment, and other covered establishments. Each of the

3

following establishments which serves the public is a place of public accommodation within the meaning of this section:

. . .

(d) <u>Any establishment</u> which is physically located within the premises of any establishment otherwise covered by this subsection, or <u>within the premises of which is physically located any such covered establishment, and which holds itself out as serving patrons of such covered establishment</u>.

§ 760.02(11), Fla. Stat. (2011) (emphasis added).

Crane contends that the existence of the cafeteria on the grounds of the Hospital causes the Hospital to qualify as a public accommodation because the cafeteria, a covered establishment, is located within the Hospital and the Hospital holds itself out as serving the patrons of the cafeteria. The Florida Civil Rights Act, however, includes specific language that excludes from its provisions food service establishments located in private hospitals.

Section 509.092 of the Florida Civil Rights Act expressly prohibits discrimination in public food service establishments.[1] It reads:

Public lodging establishments and public food service establishments are private enterprises, and the operator has the right to refuse accommodations or service to any person who is objectionable or undesirable to the operator, but such refusal may not be based upon race, creed, color, sex, physical disability, or national origin. A person

_____

[1] The Legislature has expressly indicated twice that the Florida Civil Rights Act includes specific statutory sections in both chapters 760 and 509, Florida Statutes. § 760.01(1), Fla. Stat. (2011) ("Sections 760.01-760.11 and 509.092 shall be cited as the 'Florida Civil Rights Act of 1992'"); § 760.02(1) ("'Florida Civil Rights Act of 1992' means ss. 760.01-760.11 and 509.092").

aggrieved by a violation of this section or a violation of a rule adopted under this section has a right of action pursuant to s. 760.11.

The Act, however, goes on to define public food service establishments in a manner that expressly excludes from its provisions food service establishments in facilities certified or regulated by the Florida Agency for Health Care Administration. The definition with this exclusion reads:

> (5)(a) "Public food service establishment" means any building, vehicle, place, or structure, or any room or division in a building, vehicle, place, or structure where food is prepared, served, or sold for immediate consumption on or in the vicinity of the premises; called for or taken out by customers; or prepared prior to being delivered to another location for consumption.
> (b) The following are excluded from the definition in paragraph (a):
> . . . .
> 4. Any eating place maintained by a facility certified or licensed and regulated by the Agency for Health Care Administration or the Department of Children and Families or other similar place that is regulated under s. 381.0072.

§ 509.013(5)(a)-(b)(4), Fla. Stat. (2011) (emphasis added).

The Hospital is a facility that is certified, licensed, and regulated by the Florida Agency for Health Care Administration; among other things, it is required to have a license issued by the Agency for Health Care Administration in order to operate as a hospital. § 395.003(1)(a), Fla. Stat. (2011). The cafeteria within its premises is therefore excluded from the definition of "public food service establishments" covered by the Florida Civil Rights Act. Because the cafeteria in the Hospital is not a covered establishment, the cafeteria's location within the

premises of the Hospital does not cause the Hospital to become a covered establishment.[2]

The identical interpretation of the statutes was reached by the federal district court in Martin v. Halifax Healthcare Systems, Inc., No. 6:12-cv-1268-Orl-31DAB, 2014 WL 1415647, at *2 (M.D. Fla. Apr. 11, 2014). The Court reasoned:

> The [Act's] definition of "public accommodations" includes the following: "Any establishment which is physically located within the premises of any establishment otherwise covered by this subsection, or within the premises of which is physically located any such covered establishment, and which holds itself out as serving patrons of such covered establishment." Fla. Stat. § 760.02(11)(d) (emphasis added). . . . [T]he Defendants point out that the statutory definition of "public food service establishment," found at Fla. Stat. § 509.013(5)(b)(4) excludes eating places that are maintained by a facility certified or licensed and regulated by the Agency for Health Care Administration (henceforth, the "AHCA"), which licenses Halifax Hospital. . . . In response, the Plaintiffs cite to cases under federal law in which the existence of hospital cafeterias turned hospitals into places of public accommodation, but fail to point to any evidence supporting the same result in this case or offer any argument

[2] Because we rely on an express exclusion that exists in Florida Statutes and not federal statutes, we are not reaching the issue of whether a covered cafeteria within a hospital would cause the hospital to qualify as a "covered establishment." In the context of federal statutes, courts are divided on this issue. Compare Goonewardena v. N. Shore Long Island Health Sys., No. 11 CV 2456, 2012 WL 7802351, *10 (E.D.N.Y. Nov. 5, 2012) ("[T]he case law in this Circuit is clear that a private hospital is not a place of public accommodation under Title II of the Civil Rights Act . . . ."), and Foster v. Howard Univ. Hosp., No. Civ. A. 06-244, 2006 WL 2938701, *2 (D.D.C. Oct. 13, 2006) (holding Howard University Hospital is not a place of public accommodation under Title II of the Civil Rights Act), with U.S. v. Med. Soc'y of S.C., 298 F. Supp. 145 (D.S.C. 1969) (holding that where a hospital included a snack bar and cafeteria that held themselves out to serve patrons of the hospital, the hospital itself was a place of public accommodation under the federal Civil Rights Act).

6

that would overcome the exclusion, under Florida law, for eateries operated by AHCA-licensed entities. Summary judgment will be entered in favor of the Defendants . . . .

Most importantly, this interpretation of the Act was adopted by the Florida Commission on Human Relations in deciding it had no jurisdiction in this case. Crane v. Lifemark Hosp. of Fla., Inc., Final Order No. 13-058 (FCHR Sept. 12, 2013); see also Mena v. Lifemark Hosp. of Fla., Inc., Final Order No. 12-023, at 3 (FCHR May 16, 2012) ("[T]he presence of a cafeteria maintained by a hospital and located in the hospital cannot turn the hospital into a 'a place of public accommodation' as defined by the Florida Civil Rights Act."), aff'd, Mena v. Lifemark Hosp. of Fla., Inc., 109 So. 3d 787 (Fla. 1st DCA 2013). Because the Commission is charged by the Legislature to investigate complaints of discrimination under the Florida Civil Rights Act, section 760.06(5), Florida Statutes (2011), its interpretation of the Act is entitled to due deference from this court. Verizon Fla., Inc. v. Jacobs, 810 So. 2d 906, 908 (Fla. 2002) ("An agency's interpretation of the statute it is charged with enforcing is entitled to great deference," and "a court will not depart from the contemporaneous construction of a statute by a state agency charged with its enforcement unless the construction is 'clearly erroneous.'") (citations omitted). The interpretation by the Florida Commission on Human Relations is far from clearly erroneous: indeed, we find it persuasive.

7

Crane notes, however, that the Florida Civil Rights Act provides that its purposes "are to secure for all individuals within the state freedom from discrimination because of race, color, religion, sex, national origin, age, handicap, or marital status . . . ." §760.01(3). The Act then expressly requires that its terms "shall be construed according to the fair import of its terms and purposes stated in this section and the special purposes of the particular provision involved." Id. Based on this language, Crane suggests that the court should go beyond the literal meaning of the Act in order to effectuate its broad, remedial purpose.

The language of the Act requiring that it be interpreted broadly to fulfill its remedial purpose, however, does not displace the fundamental canons of statutory interpretation that (1) "legislative intent is the polestar that guides this Court's interpretation" and (2) "[t]o discern legislative intent, we look 'primarily' to the actual language used in the statute." Borden v. East-European Ins. Co., 921 So. 2d 587, 595 (Fla. 2006); see also Delva v. Cont'l Group, Inc., 137 So. 3d 371 (Fla. 2014) (interpreting the Florida Civil Rights Act of 1992, holding "[w]hen construing a statute, this Court attempts to give effect to the Legislature's intent, looking first to the actual language used in the statute and its plain meaning") (citations and quotations omitted). Applying these fundamental canons of statutory construction, we find that the broad statement in the Act that it should be interpreted to accomplish its remedial purposes does not authorize a court to ignore

8

the Legislature's clear, unambiguous, and express exclusion of cafeterias in hospitals from the statutory definition of "public food service establishments."

## CONCLUSION

Because the eating establishments are not covered under the Florida Civil Rights Act, they do not turn the Hospital into a "place of public accommodation" under section 760.02(11)(d). Accordingly, the Commission was correct when it determined it had no jurisdiction.

Affirmed.