SALTER, J.
(dissenting).
I respectfully dissent. I would reverse the trial court’s dismissal of the claims of housing discrimination and remand the case so that the claims can proceed. I would also certify conflict with the decision of the Fourth District Court of Appeal in Belletete v. Halford, 886 So.2d 308 (Fla. 4th DCA 2004), in order that the Supreme Court of Florida may be afforded an opportunity to decide this important and recurring issue for landlords and tenants throughout the State.
Analysis
At the outset, I agree with the majority that the trial court was constrained to follow Belletete; this Court has never ruled on.the underlying question.[10] That question is:, must prospective tenants claiming discrimination in housing under the Florida Fair Housing Act (“FFHA”) pursue an administrative claim with the Florida Commission on Human Relations as a precondition to the commencement of a circuit court lawsuit asserting those claims? ■
The answer should be “no,” based on a point conceded by the landlord/appellee in its amended motion to dismiss below: “The Federal Fair Housing Act and Florida Fair Housing Act are substantively identical, and therefore the same legal analysis applies to each. Bhogaita v. Altamonte Heights Condo. Ass’n, Inc., 765 F.3d 1277, 1285 (11th Cir. 2014).” The Second District has expressed the same opinion: “The Florida Legislature essen *427 tially codified the Federal Act when it enacted the Florida Fair Housing Act.” Dornbach v. Holley, 854 So.2d 211, 213 (Fla. 2d DCA 2002).
There is no requirement that a tenant exhaust administrative remedies before commencing a housing discrimination lawsuit against a landlord under the federal Fair Housing Act. “Congress intended to provide all victims of Title VIII violations two alternative mechanisms by which to seek redress: immediate suit in federal district court, or a simple, inexpensive, informal conciliation procedure, to be followed by litigation should conciliation efforts fail.” Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 104, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979).[11]
Section 760.30(1) of the FFHA states that “The authority and responsibility for administering ss. 760,20-760,37 is in the commission.” Sections 760.20 through 760.37 constitute Florida’s Fair Housing Act, and section 760.22(1) defines “commission” to mean the Florida Commission on Human Relations. In the present case, the Florida Commission on Human Relations sought and obtained permission to file an amicus curiae brief. The Florida Commission on Human Relations, through its general counsel, argues in its brief persuasively and, in my view, correctly that:
1. The Commission has the authority and responsibility to enforce the FFHA.
2. The Commission has the authority to investigate complaints filed under both the state and federal fair housing laws through its contract with the United States Department of Housing and Urban Development.
3. The FFHA, like the federal Fair Housing Act, was not intended to require victims of housing discrimination to exhaust administrative preconditions prior to filing a civil action.
4. The Fourth District, in Belletete, did not consider the legislative history of the FFHA. Instead, the words “may file a complaint” were interpreted in the same way those words were interpreted in the Florida Civil Rights Act (not the FFHA), even though Belletete presented a fair housing issue, not a civil rights claim.[12]
We should not dismiss the Commission’s analysis and conclusion.
An agency’s interpretation of the statute it is charged with enforcing is entitled to great deference. See BellSouth Telecommunications, Inc. v. Johnson, 708 So.2d 594, 596 (Fla. 1998). Further, a court will not depart from the contemporaneous construction of a statute by a state agency charged with its enforcement unless the construction is “clearly erroneous.”
Verizon Fla., Inc. v. Jacobs, 810 So.2d 906, 908 (Fla. 2002).
In the present case, the Florida Commission on Human Relations’ conclusion, in its brief filed here, is not “clearly erroneous” and is entitled to the “great deference” the Supreme Court of Florida requires for the Commission’s “interpretation of the statute it is charged with enforcing.” Id.
*428 Textualism and Statutory Interpretation
The majority opinion includes numerous references to the “whole-text canon” and to the canons of statutory interpretation to support its result. In fact, however, a careful textual analysis compels a contrary result and supports the position of the Florida Commission on Human Relations in this case. There are two telltale provisions that highlight the differences between the Florida Civil Rights Act and the FFHA.
First, as noted in footnote 3 of this dissent, section 760.07 of the Florida Civil Rights Act provides that, for a claim of unlawful discrimination under any Florida statute, equitable remedies and damages “provided for in this section” may be considered “only after the plaintiff has exhausted his or her administrative remedy.” (Emphasis provided). In the present case, the appellants did not commence their claim under “this section” of the Florida Civil Rights Act; instead, they commenced their civil action seeking relief under section 760.35(1) of the FFHA. That section does not contain an exhaustion of administrative remedies requirement. The optional administrative claim “may” be filed under section 760.34, but it is one of the “two alternative remedies” provided to victims of federal housing discrimination, Gladstone, 441 U.S. at 104, 99 S.Ct. 1601, and the corresponding remedies provided by Florida in the FFHA.
The second textual signpost is found in sections 760.34(6) and 760.36(1) of the FFHA, which expressly address the possibility that administrative and judicial proceedings on a housing discrimination claim may pend simultaneously. Section 760.34(6) states: “Whenever an action filed in court pursuant to this section or s. 760.35 comes to trial, the commission shall immediately terminate all efforts to obtain voluntary compliance.” And section 760.35(1) specifies that a court
shall continue a civil case brought pursuant to this section or s. 760.34 from time to time before bringing it to trial if the court believes that the conciliation efforts of the commission or local agency are likely to result in satisfactory settlement of the discriminatory housing practice complained of in the complaint made to the commission or to the local agency and which practice forms the basis for the action in court.
No such option for parallel administrative and judicial proceedings is included within the Florida Civil Rights Act.
The majority opinion, like Belletete, ignores these specific textual differences. The Florida Commission on Hurpan Relations, empowered to enforce both the Florida Civil Rights Act and the FFHA, has recognized the differences and has urged us to do so as well. We should.
The Attorney General of Florida’s Analysis in 2008, and the Federal Cases
In 2008—addressing the precise issue presented in this case, but in a federal lawsuit in which the plaintiffs asserted housing discrimination claims under the FFHA—then-Attorney • General Bill McCollum successfully intervened and persuaded the United States District Court for the Southern District of Florida that: (a) the FFHA is to be construed consistently with federal law, and liberally construed in favor of home seekers;[13] (b) the decision in Belletete is “contrary to the express language of state and federal housing laws” and “is an anomaly and conflicts with Gladstone and the long line of cases holding that complainants who sue under the Fair Housing Act are entitled to *429 immediate judicial review;” (c) exhaustion of administrative remedies is not required under the FFHA, and (d) “there are compelling policy reasons for not requiring exhaustion in housing cases.”[14]
After considering the Attorney General of Florida’s analysis, the federal court reconsidered its dismissal of the FFHA claims (based on a failure to exhaust administrative remedies): “The Court is now of the opinion that were this issue before the Florida Supreme Court, that Court would not follow the Belletete decision on this narrow issue, and that this Court’s ruling dismissing the FFHA claims for failure to exhaust administrative remedies based on Belletete was incorrect.” Milsap v. Cornerstone Residential Mgmt., Inc., 2010 WL 427436, *1 (S.D. Fla. 2010).
The Court agrees with Plaintiffs and the Attorney General that the Belletete decision seems to be an anomaly. Belletete is the only appellate decision in Florida on the question of administrative exhaustion under the FFHA, and the opinion did not follow the established tenet of statutory construction: “... if a state law is patterned after a federal law on the same subject, the Florida law will be accorded the same construction as given to the federal act in the federal courts.” State v. Jackson, 650 So.2d 24, 27 (Fla. 1995). The Belletete court did not consider Gladstone and the long line of state and federal eases in which courts interpreting the FFHA have utilized the interpretation given by federal courts of the nearly identically worded federal act.
Id. at *4 (footnote and citations omitted).
Milsap was followed in a 2014 decision of the United States District Court for the Southern District of Florida, Serota v. Carriage Hills Condominium Ass’n, Inc., 2014 WL 3894264 (S.D. Fla. 2014). That case also involved the issue before us— whether the claims under the FFHA required an exhaustion of administrative remedies prior to the commencement of litigation. The court held that it did not.
Leisure Village
The majority opinion suggests that the current Attorney General of Florida now favors the “exhaustion of administrative remedies” requirement in FFHA cases, based on the 2015 case of State, Department of Legal Affairs, Office of Attorney General v. Leisure Village, Inc. of Stuart, 166 So.3d 838 (Fla. 4th DCA 2015). The issue raised by the Department of Legal Affairs in that case, however, was whether the trial court had erred in dismissing a claim under the FFHA because of collateral estoppel or under the doctrine of law of the case. The Department acted on behalf of a tenant seeking accommodation for her service dog. Although discussing Belletete for its exhaustion of remedies requirement, the current Attorney General and the Fourth District did not address, in Leisure Village, (a) the position of the Florida Human Relations Commission on that point, though the Commission is the agency charged with enforcement of the FFHA, (b) the position of the prior Attorney General on the specific issue of exhaustion of administrative remedies, or (c) the post-Belletete federal cases. Nor has the current Attorney General filed any statement of position in the present case.
Proposed Legislative Amendments
Finally, the landlord/appellee and the majority point to proposed legislative amendments to the FFHA which would eliminate any misunderstanding of the exhaustion requirement imposed by the Fourth District in Belletete. The Florida *430 Commission on Human Relations sought the amendments in order to avoid a possible loss of funding by the U.S. Department of Housing and Urban Development. The proposed amendments died in committee before the end of the legislative sessions in which they were offered—they were not voted down by the Legislature.
A review of the proposed amendment bills, the legislative staff analyses, and the bill tracking summaries prepared by the 2016 Legislature,[15] for example, does not support an inference that the Legislature disapproved of the proposed amendments. The 2016 bill in the Florida House was approved 11-0 by the Civil Justice Committee but was not taken up by the Government Operations Appropriations Subcommittee before the end of the legislative session. The counterpart bill in the Florida Senate was approved for submission as a Committee Bill by a unanimous vote of the Governmental Oversight and Accountability Committee. It was approved unanimously by the Appropriations Subcommittee on General Government, by the full Appropriations Committee, and by a vote of 38-0 in the full Senate. Inaction by the House signifies neither rejection nor any position on the exhaustion issue before us. If anything, it does appear that all Florida legislators to vote on the amendments voted in favor of them.
Conclusion
The majority has incorrectly engrafted the exhaustion requirement in the Florida Civil Rights Act, Part I of Chapter 760 (sections 760.01—760.11), into the FFHA, Part II of Chapter 760 (sections 760.20— 760.37). Sections 760.07 and 760.11(4) of the Florida Civil Rights Act, like their counterparts in the federal Civil Rights Act, Title VII, include an exhaustion requirement. The FFHA includes no such requirement, because it was patterned after the Federal Fair Housing Act, Title VIII of the Civil Rights Act. “The Florida Fair Housing Act contains statutory provisions that are substantively identical to the federal Fair Housing Act, and the facts and circumstances that comprise the federal and state fair housing claims are the same.” Loren v. Sasser, 309 F.3d 1296, 1299 n. 9 (11th Cir. 2002). The FFHA also includes sections 760.34(6) and 760.35(1), which clearly contemplate that a housing discrimination claim may be pending simultaneously with the Commission and in court, as parallel rather than serial remedies.
The majority has also failed to give “great deference” to the interpretation of the applicable statutes provided by the Florida Commission on Human Relations in its brief filed in this case. The Commission is the agency charged by statute with enforcing both the Florida Civil Rights Act and the FFHA. Similarly, the federal courts that have considered this issue, including claims under both the federal Fair Housing Act and the FFHA, have determined that plaintiffs need not exhaust administrative remedies before asserting their claims.
Finally, the majority’s opinion will also burden tenants in discriminatory eviction cases, which are filed under an expedited summary procedure, by preventing the tenants from raising FFHA claims as counterclaims pending assertion and exhaustion of administrative remedies. See Ch. 51, Fla. Stat., and § 83.59(2), Fla. Stat. (2016).
There is neither logic nor a textual basis for imposing this burdensome, time-consuming requirement on victims of housing discrimination under state law when no such burden exists under the federal law *431 that has been, and remains, the template for such claims. For all these reasons, I dissent. I respectfully submit that we should reverse the trial court’s dismissal order and remand the case for further proceedings. In doing so, I would also certify our decision to the Supreme Court of Florida based on direct conflict with the Fourth District’s decision in Belletete v. Halford, 886 So.2d 308 (Fla. 4th DCA 2004), pursuant to Florida Rule of Appellate Procedure 9.030(a)(2)(A)(vi).

. The circuit court was duty-bound to apply Belletete as a decision by the single District Court of Appeal in Florida to have decided the question. Pardo v, State, 596 So.2d 665, 666-67 (Fla. 1992). This Court is not bound by Belletete, however.

. "Title VIH” refers to 42 U.S.C. sections 3601—3631, the federal Fair Housing Act.

. Civil rights claims under the Florida Civil Rights Act, like such claims under the federal Civil Rights Act, require exhaustion of administrative remedies; see section 760.07 of the Florida Civil Rights Act, requiring the exhaustion of the administrative remedy before commencing a lawsuit under section 760.11 of that Act. The FFHA contains no such exhaustion requirement. Note also that the Florida Commission on Human Relations administers both the Florida Civil Rights Act and the FFHA.

. The Attorney General’s motion cited United States v. Housing Authority of the City of Chickasaw, 504 F.Supp, 716, 732 (S.D. Ala. 1980), for the liberal construction standard.

. The quotations are from the Attorney General’s memorandum of law filed in Milsap, cited in full in the paragraph which follows the excerpts.

. The appellee filed these documents wifh the Court.