# Third District Court of Appeal

## State of Florida

Opinion filed December 21, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-1132
Lower Tribunal No. 14-32184
_____


**Housing Opportunities Project, etc., et al.,**
Appellants,

vs.

**SPV Realty, LC,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Thomas J. Rebull, Judge.

Disability Independence Group and Matthew W. Dietz, for appellants.

Lydecker│Diaz, and Laselve E. Harrison, Stephen Hunter Johnson and Margaret H. Mevers, for appellee.

Legal Services of Greater Miami, Inc., and Jeffrey M. Hearne; Legal Aid Society of Palm Beach County, and Tequisha Y. Myles, Sandra M. Powery and Amanda Kleinrock (West Palm Beach); Florida Legal Services, Inc., and Peter P. Sleasman (Newberry), for the Housing Umbrella Group of Florida Legal Services, Inc., as amicus curiae.

Cheyanne M. Costilla (Tallahassee), General Counsel, for the Florida Commission on Human Relations, as amicus curiae.

Before SUAREZ, C.J., and SHEPHERD and SALTER, JJ.

SHEPHERD, J.

The issue in this case is whether the Florida Fair Housing Act, sections 760.20-760.37 of the Florida Statutes, requires a private claimant to engage in a statutory conciliation process directed by the Florida Commission on Human Relations as a condition precedent to the filing of a civil action under the statute. We hold that it does. A brief summary of the facts of this case will assist in explaining our decision.

## FACTUAL AND PROCEDURAL BACKGROUND

This case is a sequel to a case filed in the United States District Court for the Southern District of Florida styled Housing Opportunities for Excellence, Inc., et al v. SPV Realty, LC, Case No. 1:12-CV-24113-CMA. That case, based on the federal Fair Housing Act, 42 U.S.C.A. §§ 3601-3631, was concluded in July 2013 by a Confidential Settlement Agreement and Release between the appellant here, Housing Opportunities Project for Excellence, Inc. ("HOPE")[1] and four named employees, and SPV Realty, LC, the owner of a rental apartment building in

---

[1] HOPE is a non-profit corporation which describes as its mission to ensure people are offered the right to select housing of their choice without discrimination based upon race, religion, color, national origin, sex, disability, marital or family status or such other protected classes conferred by federal, state or local laws.

2

Miami-Dade County, Florida. While maintaining that at no point had it engaged in any discriminatory practices, SPV Realty agreed that it would not do so in the future, would make a $10,000 charitable donation to HOPE by a date certain, direct at least $1,000 monthly to affirmatively market its services in African American oriented media, and maintain sign-in sheets reflecting yearly training of SPV Realty employees. The parties agreed that jurisdiction to enforce the agreement would be in state court in Miami-Dade County, Florida.

A year later, on December 23, 2014, HOPE filed suit in the Eleventh Judicial Circuit alleging that SPV Realty had breached all of the promises it made a year earlier, including its promise of non-discrimination in the rental of units to protected classes. In two additional counts, HOPE claimed SPV Realty's post-settlement rental practices violated the Florida Fair Housing Act, and SPV Realty provided false and inaccurate information to potential rental applicants in protected classes, in violation of section 760.23(3) of the Act. The latter two counts were buttressed by detailed allegations of disparate treatment of four testers, similarly situated in all respects except race, sent to the same SPV Realty rental office in the same apartment building near in time to each other to inquire about the availability of the same type of rental units.[2] The testers were also joined as plaintiffs in the

---

[2] Testers are individuals who, without an intent to rent or purchase a home or an apartment, pose as renters or purchasers for the purpose of collecting evidence of discriminatory housing practices. Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 97 (1979). The case filed in the United States District Court was based

3

latter two counts. The trial court dismissed these counts for failure of the appellant to engage in the mandatory conciliation process, and both HOPE and the testers have appealed.[3]

**Analysis**

It is well settled among the principles of statutory construction that "[i]f the statute is plain and unambiguous and admits of but one meaning, the courts in construing it will not be justified in departing from the plain and natural language employed by the Legislature." Gough v. State ex rel. Sauls, 55 So. 2d 111, 116 (Fla. 1951) (citing Armistead v. State ex rel. Smyth, 41 So. 2d 879, 882 (Fla. 1949)); Lindamood v. Office of State Attorney, 731 So. 2d 829, 833 (Fla. 5th DCA 1999) ("The statutory language of §112.3187 [of the Florida Whistleblower Act)] is not ambiguous and the plain meaning of the statute must prevail."); Metropolitan Dade County v. Milton, 707 So. 2d 913, 915 (Fla. 3d DCA 1998) ("When the language of a statute is clear and unambiguous, the statute must be given its plain and ordinary meaning."); see also 2A Sutherland Statutory Construction § 46:4

upon the same testing protocol.

[3] We have jurisdiction in this case despite the fact that Count I, the breach of settlement agreement count, remains pending because the order appealed is final as to the individual testers. See Niesz v. R. P. Morgan Bldg., Co., 401 So. 2d 822, 823 (Fla. 5th DCA 1981) (holding order dismissing individual plaintiff was final and appealable). For this reason, it is not necessary for us to decide whether the order is final as to HOPE. See Coal. for Adequacy & Fairness in Sch. Funding, Inc. v. Chiles, 680 So. 2d 400, 403 (Fla. June 27, 1996) (finding no jurisdictional flaw in joining the Florida House of Representatives and Florida Senate as parties' plaintiff in a case where other parties had standing).

(7th ed.) (November 2016 Update) ("Courts do not have the authority to ignore plain and unambiguous language under the guise of interpretation."). It is also apodictic among the canons of judicial interpretation that in making the determination, judicial interpreters should consider the entire text of a statute, including its structure and the physical and logical relation of its many parts, when applying the language of the statute to a set of facts. <u>See</u> Scalia & Garner, <u>Reading the Law: The Interpretation of Legal Texts</u>, p. 167 (2012) ("Perhaps no interpretative fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts.").

The pertinent portions of the Florida Fair Housing Act necessary for us to decide the issue raised are found in section 736.34 of the Act, titled "Enforcement." They read as follows:

> (1) Any person who claims to have been injured by a discriminatory housing practice or who believes that he or she will be injured by a discriminatory housing practice that is about to occur may file a complaint with the commission…. Within 100 days after receiving a complaint, or within 100 days after the expiration of any period of reference under subsection (3), the commission shall investigate the complaint and give notice in writing to the person aggrieved whether it intends to resolve it. If the commission decides to resolve the complaint, it shall proceed to try to eliminate or correct the alleged discriminatory housing practice by informal methods of conference, conciliation, and persuasion.
>
> . . . .

**(4)  If, within 180 days after a complaint is filed with the commission** or within 180 days after expiration of any period of reference under subsection (3),[4] **the commission has been unable to obtain voluntary compliance with ss. 760.20-760.37, the person aggrieved may commence a civil action in any appropriate court against the respondent named in the complaint or petition for an administrative determination pursuant to s. 760.35 to enforce the rights granted or protected by ss. 760.20-760.37.**

(Emphasis added.)  Only the Florida Commission on Human Relations is exempt from complying with the exhaustion requirement in the Act.  Section 760.34(7)(a) of the Act provides:

The commission may institute a civil action in any appropriate court if it is unable to obtain voluntary compliance with ss. 760.20-760.37. The commission need not have petitioned for an administrative hearing or exhausted its administrative remedies prior to bringing a civil action.

A plain reading of the Florida Fair Housing Act reveals it admits of just one meaning, that a private citizen or entity may not pursue a civil action for a violation of the Florida Fair Housing Act prior to filing a complaint with the Commission and affording the Commission the opportunity to resolve the complaint informally.  Section 736.34(1) of the Act authorizes a person who considers himself aggrieved to file a complaint with the Commission.  The

---

[4] Subsection (3) requires the Florida Commission on Human Relations to offer any local fair housing agency with a "substantially equivalent" fair housing law the opportunity to investigate and prosecute any fair housing complaint within its jurisdiction in the stead of the Commission, provided that the local enforcement official commences proceedings within thirty days of being notified of the complaint.  § 760.34(3).

Commission then has up to one-hundred days (or one-hundred days from the date of reference to a local agency under subsection (3) of section 736.34) to resolve the complaint.  Thereafter, "[i]f within 180 days . . . the commission has been unable to obtain voluntary compliance, the person aggrieved may commence a civil action in any appropriate court . . . . § 760.34(4).  Only the Commission may circumvent this procedure.  § 760.34((7)(a).  To hold, as HOPE would have us do, that the prescribed administrative process and a civil action may run concurrently would render meaningless subsection (4) of the "Enforcement" section of the law–a judicially interpretive "no-no" under the principle that a construction of a statute which renders superfluous, meaningless or inoperative any of its provisions should not be adopted by the courts.  State v. Goode, 830 So. 2d 817, 824 (Fla. 2002).  It also would run afoul of the often overworked,[5] but here appropriate, interpretive doctrine, *expresio unius est exclusio alterius*–the expression of one thing implies

---

[5]The rule is often used in a dangerously over-expansive manner in constitutional interpretation.  See, e.g., Nichols v. State ex. Rel. Bolon, 177 So. 2d 467, 469 (Fla. 1965) (declining to apply the rule to provisions of the state constitution); see also Bush v. Holmes, 919 So. 2d 392, 420 (Fla. 2006) (Bell, J. dissenting) (explaining that the *expressio unius* maxim should rarely be applied to interpret the state constitution because the maxim "flies directly in the face" of the principle that "[a]ll power which is not *expressly limited* ... in our State Constitution remains with the people") (quoting Baker v. Martin, 330 N.C. 331, 410 S.E.2d 887, 891 (1991)); Peters v. Meeks, 163 So. 2d 753, 755, (Fla. 1964) (explaining that unlike the federal constitution, which is a grant of power, state constitutions are a limitation on the otherwise "inherent right [of each department of government] to *accomplish all objects naturally within the orbit of that department*") (quoting Sun Ins. Office, Ltd. v. Clay, 133 So. 2d 735, 742 (Fla. 1961)).

the exclusion of the other.  See Gay v. Singletary, 700 So. 2d 1220, 1221 (Fla. 1997).  In the case before us, the Legislature expressly lists from whom and when administrative exhaustion is not required, but does not include individuals or fair housing organizations within the list.  We conclude from the plain text of the statute, its structure and the relation of its parts that it admits of just one meaning, that the Legislature intended that all persons and entities except the Florida Commission on Human Relations must comply with and exhaust the statutory conciliation process before they may commence a civil action under the Florida Fair Housing Act.  Until the person or entity does so, the trial court lacks subject matter jurisdiction to hear the case.

The only other court that has considered whether the Florida Fair Housing Act contains an administrative exhaustion requirement is the Fourth District Court of Appeal in Belletete v. Halford, 886 So. 2d 308 (Fla. 4th DCA 2004).  In that case, Wayne Belletete sued an apartment building owner for rental discrimination under the Florida Fair Housing Act, for violating his civil rights under sections 760.01-760.11 of the Florida Civil Rights Act, and for discrimination on the basis of his HIV-positive condition under section 760.50 of the Florida Statutes,[6] after he

---

[6] The causes of action alleged by Belletete under the Florida Civil Rights Act, the Florida Fair Housing Act, and the law prohibiting discrimination against persons with HIV-AIDS are all found in the same chapter of the Florida Statutes, Chapter 760, titled "Civil Rights." Chapter 760 also includes a genetic testing privacy law, section 760.40, a provision empowering the Attorney General to bring a civil or administrative action on behalf of an individual injured as a result of interference

voluntarily vacated an apartment at the request of the apartment building owner when one of the other occupants of the apartment building discovered he was HIV-positive and refused to live with him. The Belletete court found, as do we in the case before us, that the trial court lacked subject matter jurisdiction to hear Belletete's Fair Housing Act claim because he had not participated in the statutory conciliation process in section 760.34 of the Act.

The Belletete court informed its analysis by examining the Florida Civil Rights Act. The Florida Civil Rights Act contains much of the same language as the Florida Fair Housing Act. 886 So. 2d at 310 (noting that sections 760.34 and 760.35 contain much the same language and structure as their Florida Civil Rights Act counterpart, section 760.11); see also Hankey v. Yarian, 755 So. 2d 93, 96 (Fla. 2000) (noting that the legislative intent with respect to a given phrase can be determined by examining other uses of the phrase in a similar context). For example, the parallel section to the Florida Fair Housing Act's "Enforcement" provision, section 760.34, is section 760.11 of the Florida Civil Rights Act, titled "Administrative and civil remedies." Section 760.11 states in relevant part that "[a]ny person aggrieved by a violation ss. 760.01-760.10 **may file a complaint with the commission.**" § 760.11 (emphasis added). In almost identical language,

_____

with his "rights secured by the State Constitution or laws of th[e] state", section 760.51, and a law prohibiting discrimination in evaluating membership in clubs that have more than 400 members, section 760.60.

9

section 760.34(1) of the Florida Fair Housing Act provides that "[a]ny person who claims to have been injured by a discriminatory housing practice or believes that he or she will be injured by a discriminatory practice that is about to occur **may file a complaint with the commission**." § 760.34(1) (emphasis added). Section 760.11 further provides that following the 180th day after filing a complaint with the Florida Commission on Human Relations, an aggrieved person may bring a civil action against the person named in the complaint or request an administrative hearing. § 760.11(4),(8). Section 760.34(4) provides that following the 180th day after filing a complaint with Florida Commission on Human Relations, an aggrieved person may commence a civil action or petition for an administrative determination. Noting that under section 760.11(1) the "may file a complaint" language has been interpreted to mean that "such a complaint must be filed with the Commission or its federal counterpart by anyone who wishes to pursue either a lawsuit or administrative proceeding" under the Florida Civil Rights Act, 886 So. 2d at 310 (quoting Ross v. Jim Adams Ford, Inc., 871 So. 2d 312, 315 (Fla. 2d DCA 2004)), the Billetete court concluded that the nearly identical language in section 760.34(4) of the Florida Fair Housing Act should be given the same interpretation. Considering the language of this provision in the full context of the Florida Fair Housing Act, and the fact that the Legislature has omitted to require administrative exhaustion in three other sections of the same "Civil Rights" chapter

10

of the Florida law, the HIV-AIDS discrimination statute, section 760.50, the provision empowering the Attorney General to bring a civil or administrative action on behalf of an individual injured as a result of interference with "rights secured by the State Constitution or laws of th[e] state", section 760.51, and the provision prohibiting discrimination in evaluating membership in private clubs that have more than 400 members, section 760.60, it is clear the Legislature knew how to include and exclude administrative exhaustion in the anti-discrimination laws it has adopted, and chose to include the requirement in the Florida Civil Rights Act and the Florida Fair Housing Act.

HOPE did not address below, and does not address here, the plain and unambiguous language of the Florida Fair Housing Act set forth above and the canons establishing the primacy of plain language in statutory interpretation. Rather, joined by its amicus, the Florida Commission on Human Rights, HOPE argues that in enacting the Florida Fair Housing Act, the Florida Legislature specifically intended to duplicate the federal cause of action. HOPE also argues that because the federal Fair Housing Act allows an aggrieved individual to select between immediate suit in federal court, "or a simple, inexpensive, informal conciliation procedure to be followed by litigation should conciliation efforts fail," Gladstone Realtors, 441 U.S. at 104, the state Act is an ineffectual weak sister to the federal Act. Whether that be true or not, neither HOPE nor the Commission

11

have identified any legislative statement indicating the federal Fair Housing Act was intended to be codified verbatim into the Florida Fair Housing Act. Cf. Winn-Dixie Stores, Inc. v. Reddick, 954 So. 2d 723, 727 (Fla. 1st DCA 2007) (noting it was appropriate to look to federal Title VII case law to analyze the Florida Civil Rights Act's attorney fee provision because Section 760.11(5) explicitly states that "it is the intent to the Legislature that this provision…be interpreted in a manner consistent with federal case law involving Title VII"). Whether the Florida Act should be amended to conform precisely to the federal Act is a matter for the Legislature.

In fact, since at least 2012, the Florida Commission on Human Relations has sought legislation that would amend the Florida Fair Housing Act to incorporate verbatim the language of 42 U.S.C. § 3613(a)(2). See, e.g., Fla. S.B. 442 (2012) (proposing to amend section 760.35 to state that "[an] aggrieved person may commence a civil action under this section whether or not a complaint has been filed under s. 760.34 and without regard to the status of that complaint"); Fla. H.B. 283 (2012) (same). On July 8, 2015, after years of accepting the status quo, HUD's Deputy Assistant Secretary for Enforcement and Programs, Sara Pratt, notified the Executive Director of the Florida Commission on Human Relations that HUD "will take action to suspend [the Commission's] participation in the Fair Housing Assistance Program," which funds Commission operations to the tune of

some $600,000 per year, approximately two-thirds of its operating fund, if the issue is not "satisfactorily resolved" by an amendment to the Florida Fair Housing Act by March 12, 2016, the end of the most recent legislative session.[7]  Brief of Fla. Comm'n on Human Relations as Amicus Curiae, Exhibit B.  Despite Commission efforts, the attempt to amend the statute again failed.  See Fla. S.B. 7008 (2016); Fla. H.B. 336 (2016).  We feel no compunction to do for the Commission or any advocacy group what the Legislature itself will not do.  We believe Belletete was correctly decided.

Finally, we are not swayed by opinions issued by some of our local federal brethren who have declined to follow Belletete.  For example, in Milsap v. Cornerstone Residential Management, Inc., 2010 WL 427436 (S.D. Fla. Feb. 1, 2010), Judge Kenneth Marra of the United States District Court for the Southern District, after having first granted the defendant's motion to dismiss plaintiffs' Florida Fair Housing Act claims relying on Belletete, reversed himself after the Attorney General, as a co-enforcer under the Act with the Florida Commission on Human Relations, moved to intervene for the purpose of arguing that the Florida Fair Housing Act does not require exhaustion of administrative remedies.  Counsel for SPV, in his Answer Brief, represents that Florida's current Attorney General has recently argued in State, Department of Legal Affairs, Office of Attorney

---

[7] HUD did not pull the trigger on federal funding after the Commission was unable to obtain an amendment to the Act.

General v. Leisure Village, Inc. of Stuart, 166 So. 3d 838 (Fla. 4th DCA 2015), reh'g denied (July 6, 2015), that administrative exhaustion **is** required under the Florida Fair Housing Act, a representation not challenged by HOPE. The remaining federal cases cited by HOPE all preceded Leisure Village. See Serota v. Carriage Hills Condo. Ass'n, 2014 WL 3894264 (S.D. Fla. May 27, 2014); Tarantino v. Pine Ridge N. I Condo. Ass'n, 2010 WL 1687744 (S.D. Fla. Apr. 26, 2010). Under Erie R. R. Co. v. Tompkins, 304 U.S. 64 (1938), federal courts in diversity of citizenship cases must apply the law of the state in which they sit. Moreover, a federal court must follow the decision of an intermediate appellate state court in the absence of other persuasive indications that the highest court of the state would decide otherwise. Galindo v. ARI Mut. Ins. Co., 203 F.3d 771, 775 (11th Cir. 2000) (citing Insurance Co. of N. Am. v. Lexow, 937 F.2d 569, 571 (11th Cir.1991)). With this decision, three panels of one district court of appeal in this state, comprising a total of nine separate judges,[8] and now two on this court, have concluded that administrative exhaustion is a pre-condition to filing a civil action under the Florida Fair Housing Act. If it could ever be said, as Judge Marra

---

[8] See Leisure Village, 166 So. 3d at 840 ( Stevenson, Ciklin and Klingensmith); Sun Harbor Homeowners' Ass'n, Inc. v. Bonura, 95 So. 3d 262 (Fla. 4th DCA 2012) (May, C.J., Damoorgian and Connor); and Belletete, 886 So. 2d at 310 (Gunther, Stone and Taylor).

once concluded, that <u>Belletete</u> is an "anomaly" that could be ignored, <u>Milsap</u>, 2010 WL 427436 at *4, that is no longer the case.  <u>Galindo</u>, 203 F.3d at 775.

Nevertheless, HOPE and the Florida Commission on Human Relations urge that when the Legislature models a statute on a federal statute, as concededly the state Legislature did in this case, that it (and by extension this court) cannot vary the law either substantively or procedurally from the correlative federal law.  The Commission is not unbiased in taking that position.  We do not fault HOPE for so doing.  After all, HOPE, as an advocate for a cause, has every right to do so.  However, while we might admit to an erosion of roles between state and federal responsibilities in our federal system in recent times, we are not yet colonies, territories, or agents of the United States government.[9]  It may be that, as crafted by the Florida Legislature, the Florida Fair Housing Act is less perfect than the federal Fair Housing Act.  On the other hand, the Legislature may have decided to underscore what it considered to be a more expeditious and less burdensome

_____

[9] The "great deference" mantra cited by the dissent illustrates the point.  The refrain seems to have become so much a part of our legal culture as to be incontestable.  An important separation-of-powers issue lurks just below the surface, however.  There is no reason for the rule when we are as capable of reading the statute or rule as the agency, which may well have its own an agenda.  "[A] court need not defer to an agency's construction or application of a statute if special agency expertise is not required, or if the agency's interpretation conflicts with the plain and ordinary meaning of the statute."  <u>Fla. Hosp. v. Fla. Agency for Health Care Admin.</u>, 823 So. 2d 844, 848 (Fla. 2d DCA 2002); <u>see also</u> <u>Donato v. Am. Tel. Co.</u>, 767 So. 2d 1146, 1153-54 (Fla. 2000) (rejecting deference rule in favor of plain meaning of the statute); <u>City of Coral Gables Code Enforcement Bd. v. Tien</u>, 967 So. 2d 963, 966 (Fla. 3d DCA 2007) (same).

15

method of resolving housing complaints. Whatever may have been the motivation, it is up to the Legislature to say what it means if there is anything more to be said, not this court.

In the meanwhile, it must be said that the residents of this state are not disadvantaged by the current state of the law. If the Florida Fair Housing Act is inadequate to satisfy an individual's immediate need for relief from housing discrimination, that individual can file an action in either state or federal court under the federal Fair Housing Act without engaging in administrative exhaustion. As to the Commission, it appears their interest in this matter is as much self-interest as legal interest. Yet even there, the General Counsel for the Commission, who argued the case before us, stated with a moral certainty, in response to more than one inquiry by the court during the course of the oral argument, that if the United States Department of Housing and Urban Development suspends funding to the Commission, the Florida Legislature would assuredly pick up the tab. This, of course, is not our bailiwick. Our task is to decide the legal issue before us. We have no difficulty determining as a matter of law that the Florida Fair Housing Act requires a private claimant to exhaust its administrative remedies before filing a civil action under the statute.

Affirmed.

SUAREZ, C.J., concurs.

SALTER, J. (dissenting).

I respectfully dissent. I would reverse the trial court's dismissal of the claims of housing discrimination and remand the case so that the claims can proceed. I would also certify conflict with the decision of the Fourth District Court of Appeal in Belletete v. Halford, 886 So. 2d 308 (Fla. 4th DCA 2004), in order that the Supreme Court of Florida may be afforded an opportunity to decide this important and recurring issue for landlords and tenants throughout the State.

Analysis

At the outset, I agree with the majority that the trial court was constrained to follow Belletete; this Court has never ruled on the underlying question.[10] That question is: must prospective tenants claiming discrimination in housing under the Florida Fair Housing Act ("FFHA") pursue an administrative claim with the Florida Commission on Human Relations as a precondition to the commencement of a circuit court lawsuit asserting those claims?

---

[10] The circuit court was duty-bound to apply Belletete as a decision by the single District Court of Appeal in Florida to have decided the question. Pardo v. State, 596 So. 2d 665, 666-67 (Fla. 1992). This Court is not bound by Belletete, however.

17

The answer should be "no," based on a point conceded by the landlord/appellee in its amended motion to dismiss below: "The Federal Fair Housing Act and Florida Fair Housing Act are substantively identical, and therefore the same legal analysis applies to each.  Bhogaita v. Altamonte Heights Condo. Ass'n, Inc., 765 F. 3d 1277, 1285 (11th Cir. 2014)."  The Second District has expressed the same opinion: "The Florida Legislature essentially codified the Federal Act when it enacted the Florida Fair Housing Act."  Dornbach v. Holley, 854 So. 2d 211, 213 (Fla. 2d DCA 2002).

There is no requirement that a tenant exhaust administrative remedies before commencing a housing discrimination lawsuit against a landlord under the federal Fair Housing Act.  "Congress intended to provide all victims of Title VIII violations two alternative mechanisms by which to seek redress: immediate suit in federal district court, or a simple, inexpensive, informal conciliation procedure, to be followed by litigation should conciliation efforts fail."  Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 104 (1979).[11]

Section 760.30(1) of the FFHA states that "The authority and responsibility for administering ss. 760.20-760.37 is in the commission."  Sections 760.20 through 760.37 constitute Florida's Fair Housing Act, and section 760.22(1) defines "commission" to mean the Florida Commission on Human Relations.  In

---

[11] "Title VIII" refers to 42 U.S.C. sections 3601 - 3631, the federal Fair Housing Act.

18

the present case, the Florida Commission on Human Relations sought and obtained permission to file an <u>amicus curiae</u> brief. The Florida Commission on Human Relations, through its general counsel, argues in its brief persuasively and, in my view, correctly that:

1. The Commission has the authority and responsibility to enforce the FFHA.

2. The Commission has the authority to investigate complaints filed under both the state and federal fair housing laws through its contract with the United States Department of Housing and Urban Development.

3. The FFHA, like the federal Fair Housing Act, was not intended to require victims of housing discrimination to exhaust administrative preconditions prior to filing a civil action.

4. The Fourth District, in <u>Belletete</u>, did not consider the legislative history of the FFHA. Instead, the words "may file a complaint" were interpreted in the same way those words were interpreted in the Florida Civil Rights Act (not the FFHA), even though <u>Belletete</u> presented a fair housing issue, not a civil rights claim.[12]

---

[12] Civil rights claims under the Florida Civil Rights Act, like such claims under the federal Civil Rights Act, require exhaustion of administrative remedies; <u>see</u> section 760.07 of the Florida Civil Rights Act, requiring the exhaustion of the administrative remedy before commencing a lawsuit under section 760.11 of that Act. The FFHA contains no such exhaustion requirement. Note also that the Florida Commission on Human Relations administers <u>both</u> the Florida Civil Rights

We should not dismiss the Commission's analysis and conclusion.

> An agency's interpretation of the statute it is charged with enforcing is entitled to great deference. See <u>Bellsouth Telecommunications, Inc. v. Johnson</u>, 708 So. 2d 594, 596 (Fla. 1998). Further, a court will not depart from the contemporaneous construction of a statute by a state agency charged with its enforcement unless the construction is "clearly erroneous."

<u>Verizon Fla., Inc. v. Jacobs</u>, 810 So. 2d 906, 908 (Fla. 2002).

In the present case, the Florida Commission on Human Relations' conclusion, in its brief filed here, is not "clearly erroneous" and is entitled to the "great deference" the Supreme Court of Florida requires for the Commission's "interpretation of the statute it is charged with enforcing." <u>Id.</u>

<u>Textualism and Statutory Interpretation</u>

The majority opinion includes numerous references to the "whole-text canon" and to the canons of statutory interpretation to support its result. In fact, however, a careful textual analysis compels a contrary result and supports the position of the Florida Commission on Human Relations in this case. There are two telltale provisions that highlight the differences between the Florida Civil Rights Act and the FFHA.

First, as noted in footnote 3 of this dissent, section 760.07 of the Florida Civil Rights Act provides that, for a claim of unlawful discrimination under any <u>Florida statute, equitable remedies and damages "provided for in this section" may</u> Act and the FFHA.

20

be considered "only after the plaintiff has exhausted his or her administrative remedy." (Emphasis provided). In the present case, the appellants did not commence their claim under "this section" of the Florida Civil Rights Act; instead, they commenced their civil action seeking relief under section 760.35(1) of the FFHA. That section does not contain an exhaustion of administrative remedies requirement. The optional administrative claim "may" be filed under section 760.34, but it is one of the "two alternative remedies" provided to victims of federal housing discrimination, Gladstone, 441 U.S. at 104, and the corresponding remedies provided by Florida in the FFHA.

The second textual signpost is found in sections 760.34(6) and 760.35(1) of the FFHA, which expressly address the possibility that administrative and judicial proceedings on a housing discrimination claim may pend simultaneously. Section 760.34(6) states: "Whenever an action filed in court pursuant to this section or s. 760.35 comes to trial, the commission shall immediately terminate all efforts to obtain voluntary compliance." And section 760.35(1) specifies that a court

> shall continue a civil case brought pursuant to this section or s. 760.34 from time to time before bringing it to trial if the court believes that the conciliation efforts of the commission or local agency are likely to result in satisfactory settlement of the discriminatory housing practice complained of in the complaint made to the commission or to the local agency and which practice forms the basis for the action in court.

No such option for parallel administrative and judicial proceedings is included within the Florida Civil Rights Act.

The majority opinion, like Belletete, ignores these specific textual differences. The Florida Commission on Human Relations, empowered to enforce both the Florida Civil Rights Act and the FFHA, has recognized the differences and has urged us to do so as well. We should.

The Attorney General of Florida's Analysis in 2008, and the Federal Cases

In 2008—addressing the precise issue presented in this case, but in a federal lawsuit in which the plaintiffs asserted housing discrimination claims under the FFHA—then-Attorney General Bill McCollum successfully intervened and persuaded the United States District Court for the Southern District of Florida that: (a) the FFHA is to be construed consistently with federal law, and liberally construed in favor of home seekers;[13] (b) the decision in Belletete is "contrary to the express language of state and federal housing laws" and "is an anomaly and conflicts with Gladstone and the long line of cases holding that complainants who sue under the Fair Housing Act are entitled to immediate judicial review;" (c) exhaustion of administrative remedies is not required under the FFHA, and (d)

---

[13] The Attorney General's motion cited United States v. Housing Authority of the City of Chickasaw, 504 F. Supp. 716, 732 (S.D. Ala. 1980), for the liberal construction standard.

"there are compelling policy reasons for not requiring exhaustion  in housing cases."[14]

After considering the Attorney General of Florida's analysis, the federal court reconsidered its dismissal of the FFHA claims (based on a failure to exhaust administrative remedies): "The Court is now of the opinion that were this issue before the Florida Supreme Court, that Court would not follow the Belletete decision on this narrow issue, and that this Court's ruling dismissing the FFHA claims for failure to exhaust administrative remedies based on Belletete was incorrect."  Milsap v. Cornerstone Residential Mgmt., Inc., 2010 WL 427436, *1 (S.D. Fla. 2010).

> The Court agrees with Plaintiffs and the Attorney General that the Belletete decision seems to be an anomaly. Belletete is the only appellate decision in Florida on the question of administrative exhaustion under the FFHA, and the opinion did not follow the established tenet of statutory construction: "... if a state law is patterned after a federal law on the same subject, the Florida law will be accorded the same construction as given to the federal act in the federal courts." State v. Jackson, 650 So. 2d 24, 27 (Fla. 1995).  The Belletete court did not consider Gladstone and the long line of state and federal cases in which courts interpreting the FFHA have utilized the interpretation given by federal courts of the nearly identically worded federal act.

Id. at *4 (footnote and citations omitted).

---

[14] The quotations are from the Attorney General's memorandum of law filed in Milsap, cited in full in the paragraph which follows the excerpts.

Milsap was followed in a 2014 decision of the United States District Court for the Southern District of Florida, Serota v. Carriage Hills Condominium Ass'n, Inc., 2014 WL 3894264 (S.D. Fla. 2014). That case also involved the issue before us—whether the claims under the FFHA required an exhaustion of administrative remedies prior to the commencement of litigation. The court held that it did not.

Leisure Village

The majority opinion suggests that the current Attorney General of Florida now favors the "exhaustion of administrative remedies" requirement in FFHA cases, based on the 2015 case of State, Department of Legal Affairs, Office of Attorney General v. Leisure Village, Inc. of Stuart, 166 So. 3d 838 (Fla. 4th DCA 2015). The issue raised by the Department of Legal Affairs in that case, however, was whether the trial court had erred in dismissing a claim under the FFHA because of collateral estoppel or under the doctrine of law of the case. The Department acted on behalf of a tenant seeking accommodation for her service dog. Although discussing Belletete for its exhaustion of remedies requirement, the current Attorney General and the Fourth District did not address, in Leisure Village, (a) the position of the Florida Human Relations Commission on that point, though the Commission is the agency charged with enforcement of the FFHA, (b) the position of the prior Attorney General on the specific issue of exhaustion of

24

administrative remedies, or (c) the post-<u>Belletete</u> federal cases. Nor has the current Attorney General filed any statement of position in the present case.

<u>Proposed Legislative Amendments</u>

Finally, the landlord/appellee and the majority point to proposed legislative amendments to the FFHA which would eliminate any misunderstanding of the exhaustion requirement imposed by the Fourth District in <u>Belletete</u>. The Florida Commission on Human Relations sought the amendments in order to avoid a possible loss of funding by the U.S. Department of Housing and Urban Development. The proposed amendments died in committee before the end of the legislative sessions in which they were offered—they were not voted down by the Legislature.

A review of the proposed amendment bills, the legislative staff analyses, and the bill tracking summaries prepared by the 2016 Legislature,[15] for example, does not support an inference that the Legislature disapproved of the proposed amendments. The 2016 bill in the Florida House was approved 11-0 by the Civil Justice Committee but was not taken up by the Government Operations Appropriations Subcommittee before the end of the legislative session. The counterpart bill in the Florida Senate was approved for submission as a Committee Bill by a unanimous vote of the Governmental Oversight and Accountability

---

[15] The appellee filed these documents with the Court.

25

Committee. It was approved unanimously by the Appropriations Subcommittee on General Government, by the full Appropriations Committee, and by a vote of 38-0 in the full Senate. Inaction by the House signifies neither rejection nor any position on the exhaustion issue before us. If anything, it does appear that all Florida legislators to vote on the amendments voted in favor of them.

Conclusion

The majority has incorrectly engrafted the exhaustion requirement in the Florida Civil Rights Act, Part I of Chapter 760 (sections 760.01 - 760.11), into the FFHA, Part II of Chapter 760 (sections 760.20 – 760.37). Sections 760.07 and 760.11(4) of the Florida Civil Rights Act, like their counterparts in the federal Civil Rights Act, Title VII, include an exhaustion requirement. The FFHA includes no such requirement, because it was patterned after the Federal Fair Housing Act, Title VIII of the Civil Rights Act. "The Florida Fair Housing Act contains statutory provisions that are substantively identical to the federal Fair Housing Act, and the facts and circumstances that comprise the federal and state fair housing claims are the same." Loren v. Sasser, 309 F.3d 1296, 1299 n. 9 (11th Cir. 2002). The FFHA also includes sections 760.34(6) and 760.35(1), which clearly contemplate that a housing discrimination claim may be pending simultaneously with the Commission **and** in court, as parallel rather than serial remedies.

The majority has also failed to give "great deference" to the interpretation of the applicable statutes provided by the Florida Commission on Human Relations in its brief filed in this case. The Commission is the agency charged by statute with enforcing both the Florida Civil Rights Act and the FFHA. Similarly, the federal courts that have considered this issue, including claims under both the federal Fair Housing Act and the FFHA, have determined that plaintiffs need not exhaust administrative remedies before asserting their claims.

Finally, the majority's opinion will also burden tenants in discriminatory eviction cases, which are filed under an expedited summary procedure, by preventing the tenants from raising FFHA claims as counterclaims pending assertion and exhaustion of administrative remedies. See Ch. 51, Fla. Stat., and § 83.59(2), Fla. Stat. (2016).

There is neither logic nor a textual basis for imposing this burdensome, time-consuming requirement on victims of housing discrimination under state law when no such burden exists under the federal law that has been, and remains, the template for such claims. For all these reasons, I dissent. I respectfully submit that we should reverse the trial court's dismissal order and remand the case for further proceedings. In doing so, I would also certify our decision to the Supreme Court of Florida based on direct conflict with the Fourth District's decision in Belletete v.

Halford, 886 So. 2d 308 (Fla. 4th DCA 2004), pursuant to Florida Rule of Appellate Procedure 9.030(a)(2)(A)(vi).