# Third District Court of Appeal

## State of Florida

Opinion filed August 3, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1921
Lower Tribunal No. 20-032
_____

**Cecilia Mattino, et al.,**
Appellants,

vs.

**City of Marathon, Florida, et al.,**
Appellees.

An Appeal from the State of Florida, Department of Economic Opportunity.

Richard Grosso, P.A., and Richard Grosso (Plantation), for appellants.

Shawn D. Smith, Key West City Attorney, and George B. Wallace, Assistant City Attorney; Smith Hawks, PL, and Barton W. Smith, Nikki Pappas and Christopher B. Deem, for appellees.

Before EMAS, MILLER and LOBREE, JJ.

EMAS, J.

## I.  INTRODUCTION

Appellants Cecilia Mattino, Naja Girard and Catherine Bosworth, permanent residents of the Florida Keys, appeal from a final order of the Department of Economic Opportunity (DEO), which determined that the Comprehensive Plan Amendments adopted by the City of Key West, City of Marathon and City of Islamorada (collectively the Cities) are in compliance with Florida law.  While appellants raise several claims,[1] we write to address only the contention that the Comprehensive Plan Amendments fail to maintain a hurricane evacuation clearance time for permanent residents of no more than 24 hours, as required by section 380.0552(9)(a)2., Florida Statutes (2020).  We agree and, for the reasons that follow, we reverse the order as to the City of Marathon and City of Islamorada.  However, we affirm the order as it relates to the City of Key West.[2]

---

[1] We affirm without further discussion as to the additional claims raised by appellants, which include: (1) the amendments violate the "internal consistency" requirement in section 163.3177, Florida Statutes; (2) the two-phase evacuation plan violates section 163.3177(1)(f)1., Florida Statutes, because it is not supported by relevant and appropriate data and analysis; and (3) the Agency erred in interpreting section 380.0552(7), Florida Statutes, to allow the general "Principles for Guiding Development" to justify non-compliance with the specific 24-hour evacuation time development cap in section 380.0552(9)(a)(2).

[2] The cities of Marathon and Islamorada are located within the statutorily designated "Florida Keys Area of Critical State Concern." In 1984, the City of Key West was designated an Area of Critical State Concern, pursuant to

2

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Florida Keys Area Protection Act and the 24-Hour Hurricane Evacuation Clearance Time Requirement*

Section 380.0552, Florida Statutes (2020), is known as the "Florida Keys Area Protection Act."  First enacted in 1979, the Act designates the Florida Keys as an Area of Critical State Concern, and expresses a legislative intent to establish a land use management plan to protect the Florida Keys environment, preserve the Keys' unique character, promote orderly and balanced growth, and protect and improve water quality. Importantly for our purposes, the Legislature also expressed, through this Act, its intent to:

> Provide affordable housing in close proximity to places of employment in the Florida Keys.
>
> Ensure that the population of the Florida Keys can be safely evacuated.

§ 380.0552(2)(d) and (j).

In 2006, the Florida Legislature revised the Act, adding a provision that all amendments to the comprehensive plans in the Florida Keys Area must

---

Chapter 28-36, Florida Administrative Code.  As a result, Marathon and Islamorada are subject to the requirements of section 380.0552(9)(a)2., while Key West is not.  Key West is instead subject to the Principles for Guiding Development contained in Florida Administrative Code, Rule 28-36.003.

be reviewed for compliance with the "[g]oals, objectives and policies to protect public safety and welfare in the event of a natural disaster by maintaining a hurricane evacuation **_clearance time for permanent residents_** of **_no more than 24 hours_**." § 380.0552(4)(e)2.,[3] Fla. Stat. (2006) (emphasis added). The statute further provides this evacuation clearance time "shall be determined by a hurricane evacuation study conducted in accordance with a professionally accepted methodology and approved by the state land planning agency." Id.

B. *The Cities' Current Comprehensive Plans*

Each City's current comprehensive plan includes a DEO work program designed to address certain categories of concern. Relevant to this appeal, the work program included a list of requirements that had to be satisfied by July 1, 2012. Significant among them was a requirement that local governments within the Florida Keys Area of Critical State Concern (Islamorada and Marathon, but not Key West) enter into a memorandum of understanding with DEO, the Division of Emergency Management and each of the other Keys local governments to stipulate to "input variables and assumptions, including regional considerations, for utilizing the Florida Keys

---

[3] The language of this provision has remained unchanged since its adoption in 2006, but in 2010 was renumbered to section 380.0552(9)(a)2.

4

Hurricane Evacuation Model or other models acceptable to the Department to accurately depict evacuation clearance times for the population of the Florida Keys." Fla. Admin. Code R. 28-20.140. Further, the model had to be run so as "to complete an analysis of maximum build-out capacity for the Florida Keys Area of Critical State Concern, consistent with the requirement to maintain a 24-hour evacuation clearance time and the Florida Keys Carrying Capacity Study constraints." Id.

In 2012, the DEO created the Hurricane Evacuation Clearance Time Workgroup (the Evacuation Workgroup), which held a series of public workshops. The Evacuation Workgroup ultimately presented its findings and selected a hurricane model (the Transportation Interface for Modeling Evacuations, "TIME") to accurately depict evacuation clearance times for the population of the Keys Area of Critical State Concern and the Key West Area of Critical State Concern. The selected scenario included the continuation of then-existing annual building permit allocations and produced an evacuation clearance time of 24 hours, with a future allocation of 3,500 new residential building permits to be distributed over a ten-year period from 2013 to 2023. Each local government would be allotted their share of residential building permits from the 3,500 additional units accounted for in the TIME model.

This evacuation scenario assumed a two-phase evacuation plan, with Phase I (the "first" 24-hour evacuation period) consisting of non-residents, visitors, recreational vehicles, travel trailers, live-aboards (transient and non-transient), military personnel, mobile home residents, special needs residents, and hospital and nursing home patients. The Phase I evacuation was further divided into two groups with military personnel, tourists, and other non-residents ordered to evacuate approximately 48 hours in advance of predicted arrival of tropical storm force winds; and mobile home residents, special needs residents, and hospital and nursing home patients ordered to evacuate approximately 36 hours in advance of predicted arrival of tropical storm force winds.

Phase II (the "second" 24-hour evacuation period) consisted of Florida Keys permanent residents living in site-built homes (as opposed to prefabricated units such as mobile homes). These permanent residents were to be evacuated approximately 30 hours in advance of the predicted arrival of tropical force storm winds.

In 2012, Monroe County and the Cities entered into a memorandum of understanding with DEO, agreeing to use the TIME model described above. The memorandum of understanding memorialized the staged evacuation procedure ultimately adopted by the local governments:

- Approximately 48 hours in advance of tropical storm winds, a mandatory evacuation of non-residents, visitors, RVs, travel trailers, live-aboards (transient and non-transient), and military personnel from the Keys must be initiated.

- Approximately 36 hours in advance of tropical storm winds, a mandatory evacuation of mobile home residents, special needs residents, and hospital and nursing home patients from the Keys shall be initiated.

- Approximately 30 hours in advance of tropical storm winds, a mandatory phased evacuation of permanent residents by evacuation zone . . . shall be initiated.

C. *The Cities' Amendments to the Comprehensive Plans*

The recent effort to address affordable housing in the Florida Keys began in 2017, when DEO determined amendments to the comprehensive plans were needed because the current regulatory structure did not allow for adequate building permits to create affordable workforce housing for Florida Keys residents. To address the issue, DEO developed The Keys Workforce Housing Initiative (the Housing Initiative).

The Housing Initiative allows for up to 1,300 new building permit allocations for "workforce-affordable housing" throughout the Keys. The Initiative's stated goal is to support the Cities' "workforce by alleviating constraints on affordable housing," and to "require new construction or repurposed structures that participate[] to commit to evacuating renters in the 48-24-hour window of evacuation." This initiative includes a requirement

7

that these new units be deed-restricted to ensure that "tenants evacuate during the period in which transient units are required to evacuate."

Nevertheless, any amendments to a comprehensive plan must comply with the statutory requirement of "maintaining a hurricane evacuation clearance time for permanent residents of no more than 24 hours." § 380.0552(9)(a)2., Fla. Stat. (2020). In other words, the additional development of affordable housing (and the accompaniment of additional permanent residents) is legislatively capped to ensure that all permanent residents can still safely evacuate the Florida Keys within a 24-hour period.

As previously described, the current comprehensive plans rely upon a two-phase evacuation plan in the event of a hurricane, and identify several categories of people (e.g., visitors, tourists, permanent residents, etc.) for evacuation over a combined 48-hour period. This 48-hour period is divided into two separate 24-hour phases (Phase I and Phase II).

The Comprehensive Plan Amendments (the Amendments) would add those permanent residents living in the 1,300 new housing units to the categories of people designated for Phase I evacuation (i.e., the "first" 24 hours). This would mean that permanent residents would be evacuated during both Phase I and Phase II, and therefore the Cities would be

8

evacuating permanent residents of the Keys over a two-phase, 48-hour period:

> ► Phase I (the first 24-hour evacuation period) provides for mandatory evacuation of non-residents, visitors, recreational vehicles, travel trailers, live-aboards (transient and non-transient), military personnel, mobile home residents, special needs residents, hospital and nursing home patients, and **permanent residents of the 1,300 affordable housing units approved for construction by the Amendments.**

> ► Phase II (the second 24-hour evacuation period) provides for mandatory evacuation of all permanent residents living in site-built homes.

The Cities thereafter adopted the Comprehensive Plan Amendments, which allow new residential units to be built in Key West (300 to 700 units), Islamorada (300 units) and Marathon (300 units). The Plan Amendments are virtually identical in all material respects. Consistent with the Housing Initiative, the Comprehensive Plan Amendments require that the additional units be deed-restricted for workforce affordable housing and—critically for our purposes—that the new permanent residents of these 1,300 permanent residential units evacuate in Phase I of the two-phase evacuation plan.

9

In 2018, appellants filed petitions for a formal administrative hearing with DOAH, asserting that the Cities' Comprehensive Plan Amendments are inconsistent with and violate the statutory requirement of maintaining a 24-hour evacuation clearance time for permanent residents. The administrative law judge conducted a final hearing in December 2019, at which the parties presented numerous witnesses and experts in support of their respective positions. The administrative law judge issued a recommended order (and later, a recommended order on remand following a hearing on exceptions raised to the original order). DEO later issued its Final Order, adopting the administrative law judge's recommended order on remand, and determining that the Comprehensive Plan Amendments do not violate section 380.0552(9)(a)2., and are otherwise in compliance with Florida law. This appeal followed.

III.    **STANDARD OF REVIEW**

The Agency's findings of fact are reviewed for competent substantial evidence, while questions of law, including interpretation and construction of statutory provisions, are reviewed de novo. Safirstein v. Dep't of Health, 271 So. 3d 1178, 1180 (Fla. 3d DCA 2019) ("Our standard of review of an agency's interpretation of a statute is de novo. The standard of review of the agency's findings of fact is that of competent, substantial evidence")

(quotation omitted). "[A] reviewing court may set aside agency action when it finds that the action is dependent on findings of fact that are not supported by substantial competent evidence in the record, there are material errors in procedure, incorrect interpretations of law, or the agency abused its discretion." Galvan v. Dep't of Health, 285 So. 3d 975, 979 (Fla. 3d DCA 2019) (citing § 120.68, Fla. Stat. (2018)).

## IV.    DISCUSSION AND ANALYSIS

Section 380.0552(9)(a)2. provides in relevant part:

9) Modification to plans and regulations.--

(a) Any land development regulation or element of a local comprehensive plan in the Florida Keys Area may be enacted, amended, or rescinded by a local government, but the enactment, amendment, or rescission becomes effective only upon approval by the state land planning agency. The state land planning agency shall review the proposed change to determine if it is in compliance with the principles for guiding development specified in chapter 27F-8, Florida Administrative Code, as amended effective August 23, 1984, and must approve or reject the requested changes within 60 days after receipt. **Amendments to local comprehensive plans in the Florida Keys Area must also be reviewed for compliance with the following:**

*** 

2. Goals, objectives, and policies to protect public safety and welfare in the event of a natural disaster by **maintaining a hurricane evacuation clearance time for permanent residents of no more than 24 hours**. The hurricane evacuation clearance time shall be determined by a hurricane evacuation study conducted in accordance with a professionally accepted methodology and approved by the state land planning agency.

11

(Emphasis added).

We examine the statute, and construe its provisions, within the framework established by longstanding principles of statutory construction:

> Legislative intent is the polestar that guides a court's statutory construction analysis, and "[t]o discern legislative intent, a court must look first and foremost at the actual language used in the statute." Larimore v. State, 2 So. 3d 101, 106 (Fla. 2008). "It is a fundamental principle of statutory construction that where the language of a statute is plain and unambiguous there is no occasion for judicial interpretation." Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So. 2d 452, 454 (Fla. 1992).

DMB Inv. Tr. v. Islamorada, Vill. of Islands, 225 So. 3d 312, 317 (Fla. 3d DCA 2017).

> A court's determination of the meaning of a statute begins with the language of the statute. If that language is clear, the statute is given its plain meaning, and the court does not look behind the statute's plain language for legislative intent or resort to rules of statutory construction."

Halifax Hosp. Med. Ctr. v. State, 278 So. 3d 545, 547 (Fla. 2019) (citations and quotations omitted).

Under the Comprehensive Plan Amendments of Marathon and Islamorada, the permanent residents of the newly added affordable housing units must evacuate "in the 48 to 24-hour window of evacuation," described by the Cities as the "Phase I clearance window of evacuation."

However, the mandatory evacuation of these permanent residents in Phase I of a 48-hour, two-phase evacuation plan means that permanent

12

residents will be evacuating in both Phase I (the first 24-hour period) and in Phase II (the second 24-hour period), resulting in a hurricane evacuation clearance time for permanent residents of **more than** 24 hours. This violates section 380.0552(9)(a)2., which unambiguously requires that amendments to the comprehensive plan "maintain[] a hurricane evacuation clearance time for permanent residents **of no more than** 24 hours." (Emphasis added).

Marathon and Islamorada counter that the statutory 24-hour evacuation requirement can be met if evacuation of the permanent residents living in these additional units can be completed within the **first** 24 hours of a 48-hour evacuation scenario. But the statute does not contemplate, much less permit, a "first" 24-hour or "Head Start" scenario for evacuation of some of Florida Keys' permanent residents, followed by an evacuation of the remaining permanent residents in a second 24-hour period. Instead, it provides for a single, 24-hour evacuation clearance time for all permanent residents.[4]

_____

[4] Marathon and Islamorada do not dispute that, under the Amendments, permanent residents are evacuated over a period of more than 24 hours. Instead, they contend that their existing comprehensive plans already provide for the evacuation of certain permanent residents in one 24-hour period (e.g., mobile home residents) before the evacuation of permanent residents in a second 24-hour period (e.g., residents of site-built homes), that such plans were previously administratively deemed to be in compliance, and that we should defer to such an administrative determination. We do not agree. First, the validity of the current comprehensive plans is not before

13

Were we to hold that the Amendments—which provide for mandatory evacuation of permanent residents over a two-phase, 48-hour period—comply with section 380.0552(9)(a)2., so too would a three-phase (72-hour), four-phase (96-hour), or five-phase (120-hour) evacuation plan, all of which would simply be different in degree—but not different in kind—than the two-phase evacuation plan under the Comprehensive Plan Amendments.

---

us, and is beyond our scope of review, which is limited to whether "[a]mendments to local comprehensive plans in the Florida Keys Area" comply with the required "hurricane evacuation clearance time for permanent residents of no more than 24 hours." § 380.0552(9)(a)2., Fla. Stat.

Additionally, while we recognize Florida courts have historically accorded great deference to an administrative agency's own interpretation of a statute or rule it was charged with administering, see, e.g., United Grand Condo. Owners Inc. v. Grand Condo. Ass'n, Inc., 929 So. 2d 24, 25 (Fla. 3d DCA 2006) (noting: "An administrative agency's interpretation of a statute which it is legislatively charged with administering is entitled to great weight and should not be overturned unless clearly erroneous"), Florida voters in 2018 adopted Article V, § 21 of the Florida Constitution, prohibiting such deference:

> In interpreting a state statute or rule, a state court or an officer hearing an administrative action pursuant to general law may not defer to an administrative agency's interpretation of such statute or rule, and must instead interpret such statute or rule de novo.

Finally, we note that even before adoption of this constitutional amendment, Florida law provided that "a court need not defer to an agency's construction or application of a statute if special agency expertise is not required, or if the agency's interpretation conflicts with the plain and ordinary meaning of the statute." Hous. Opportunities Project v. SPV Realty, LC, 212 So. 3d 419, 426 n. 9 (Fla. 3d DCA 2016) (quoting Fla. Hosp. v. Fla. Agency for Health Care Admin., 823 So. 2d 844, 848 (Fla. 2d DCA 2002)).

Marathon and Islamorada cannot avoid the plain and unambiguous language of the statute merely by creating discrete "categories" of permanent residents, each assigned a different 24-hour timeframe within which to evacuate those permanent residents using the very same and solitary roadway leading out of the Keys.[5]

The 24-hour hurricane evacuation clearance time mandate is in furtherance of the Florida Keys Area Protection Act's goal of ensuring "that the population of the Florida Keys can be safely evacuated."[6] It serves as the counterpoint to the Act's other stated goal of providing affordable housing to Florida Keys permanent residents. The Act permits the development of additional affordable workforce housing, but only to the extent that the well-

---

[5] To be clear, our holding does not prohibit a staggered evacuation of permanent residents by geographical zones, categories, or phases. It simply means that all permanent residents evacuating under any such plan must do so within 24 hours as required by the statute.

[6] Martin Senterfitt, Monroe County's Director of Emergency Management, testified at the hearing that, while rapid intensification storms are not a "common occurrence," they are possible and require that permanent residents be able to evacuate in a 24-hour period:

> A rapid intensification storm is a storm that—just as its name implies. It rapidly grows over a period of 24 hours, much—much faster than a normal storm would grow.
>
> * * *
>
> We may have less than 48 hours, and so I've challenged all of our citizens in the community to ask themselves, if you only had 24-hour notice, how would that impact your planning?

15

being of its permanent residents can be maintained by ensuring that such increased housing does not threaten their safe evacuation in the event of a natural disaster. The two-phase evacuation plan contained in Marathon and Islamorada's Comprehensive Plan Amendments fails to meet the statute's mandate, and the Department of Economic Opportunity (DEO) erred in concluding that the Comprehensive Plan Amendments by Marathon and Islamorada were in compliance with the applicable requirements of Florida law.

We are keenly aware of the well-intended objectives and meritorious goals embodied within the Comprehensive Plan Amendments of Marathon and Islamorada. We further acknowledge the substantial challenge those cities face in attempting to balance the competing interests at stake. Nevertheless, we "do not have the authority to ignore plain and unambiguous language under the guise of interpretation." Housing Opportunities Project v. SPV Realty, LC, 212 So. 3d 419, 421 (Fla. 3d DCA 2016) (quoting 2A Sutherland Statutory Construction § 46:4 (7th ed.) (November 2016 Update)).

Indeed, "unambiguous language is not subject to judicial construction, however wise it may seem to alter the plain language." State v. Jett, 626 So. 2d 691, 693 (Fla. 1993). If the plain language of the statutory text does not

properly reflect the legislative intent, it falls upon that body, and not this court, to amend the statute to reflect that intent. See Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 390-91 (2000) (Scalia, J., concurring) ("The only reliable indication of that [legislative] intent—the only thing we know for sure can be attributed to all of them—is the words of the bill that they voted to make law"); Fla. Convalescent Ctrs. v. Somberg, 840 So. 2d 998, 1001 (Fla. 2003) ("Logically, if the Legislature had intended for the Nursing Home Act to be limited by the Wrongful Death Act, it would have said so, rather than broadly providing not only for damages but also for a personal representative to claim those damages").

## V.    CONCLUSION

We reverse the final order as to the cities of Marathon and Islamorada because their Comprehensive Plan Amendments violate section 380.0552(9)(a)2., Florida Statutes (2020), which requires that "[a]mendments to local comprehensive plans in the Florida Keys . . . maintain[] a hurricane evacuation clearance time for permanent residents of no more than 24 hours."  We affirm the final order in all other respects, and affirm en toto as to the City of Key West.  The cause is remanded for further proceedings consistent with this opinion.

17