JACOBUS, J.
The School Board of Seminole County, Florida (“School Board”) timely appeals an order of the Florida State Board of Education (“State Board”). The order allows Renaissance Charter School, Inc., and Renaissance Charter School at Seminole (collectively “Renaissance”) to operate a charter school in Seminole County over the objections of the School Board. We reverse.
On August 1, 2011, Renaissance filed an application with the School Board to open a new charter school in Seminole County in the fall of 2012. The proposed school was to be named the Renaissance Charter School at Seminole and was to serve grades K through 6 in its first year, grades K through 7 in its second year, and grades K through 8 thereafter. Renaissance hoped to open the school with 862 students and to grow to 1,415 students by its fifth year. The application was made pursuant to section 1002.331, Florida Statutes (2011), which allowed Renaissance to replicate a “high-performing” charter school already in operation. The high-performing charter school that Renaissance professed to be replicating was the North Broward County Academy of Excellence Middle School, a middle school which serves grades 6 through 8. The school was to be managed by Charter Schools USA, an “education service provider” (“ESP”), which manages approximately thirty schools in three states.
A workshop was held on the application, and the superintendent, Bill Vogel, completed a twenty-five page, State Board-required Florida Charter School Application Evaluation Instrument with respect to the application. See Fla. Admin. Code R. 6A-6.0786. Based on the criteria outlined in the instrument, the superintendent recommended the denial of Renaissance’s application. The School Board later voted unanimously in favor of denial and the outcome was formally communicated to Renaissance in a letter dated October 6, 2011. The four-page letter stated the application had been denied because Renaissance’s proposed program: 1) did not substantially replicate the educational program of the high-performing charter school; 2) did not provide an adequate financial plan; 3) failed to identify how it would meet the statutorily-defined purpose of meeting high standards of student achievement; 4) failed to show an arm’s length relationship between the school’s ESP, Charter Schools USA, and the governing board; and 5) did not have a sufficient plan for English language learners (“ELL”).
*74 Renaissance appealed the School Board’s denial of its application to the State Board on November 7, 2011. The record provided to the State Board included the application, a copy of the letter from the School Board denying the application, and a video transcript of the school board meeting. The School Board’s response included all relevant documents, including a transcript of the workshop. At a hearing on the appeal, the State Board heard numerous charter school appeals. After cursory discussion and an agreement that the issues were essentially the same as involved in a prior appeal, the State Board unanimously “granted” Renaissance’s appeal. The Commissioner of Education’s final order memorializing the State Board’s decision was entered on May 21, 2012. The reason given for reversing the School Board’s decision was that it had “failed to show by clear and convincing evidence that the Charter Applicant’s application did not materially comply with the requirements of Section 1002.33(6)(c)3.b., Florida Statutes.”
The School Board appealed the State Board’s order, requiring it to permit Renaissance to open and operate a charter school in Seminole County. Among the numerous reasons given to reverse the State Board’s decision, we find one issue dispositive of the appeal. We agree with the School Board that Renaissance’s proposed charter school’s educational program did not “substantially replicate” that of the high-performing charter school being replicated — that of North Broward Academy of Excellence Middle School— and that the order granting Renaissance’s application must therefore be reversed.
The “substantially replicates” requirement is contained in those provisions of the charter school statute which refer to “high-performing” charter schools. Schools identified as “high-performing” charter schools pursuant to section 1002.331, Florida Statutes, are given preferential treatment in the application process. They are entitled to submit an application to a sponsor[1] to establish and operate a new charter school that will “substantially replicate” its educational program in an existing school. The statute states:
(a) A high-performing charter school may submit an application pursuant to s. 1002.33(6) in any school district in the state to establish and operate a new charter school that will substantially replicate its educational program. An application submitted by a high-performing charter school must state that the application is being submitted pursuant to this paragraph and must include the verification letter provided by the Commissioner of Education pursuant to subsection (5). If the sponsor fails to act on the application within 60 days after receipt, the application is deemed approved and the procedure in s. 1002.33(6)(h) applies. If the sponsor denies the application, the high-performing charter school may appeal pursuant to s. 1002.33(6).
(b) A high-performing charter school may not establish more than one charter school within the state under paragraph (a) in any year. A subsequent application to establish a charter school under paragraph (a) may not be submitted un *75 less each charter school established in this manner achieves high-performing charter school status.
§ 1002.331(3)(a)-(b), Fla. Stat. (emphasis supplied).
One of the permitted reasons to deny an application is if the sponsor demonstrates by “clear and convincing evidence” that “[t]he proposed charter school’s educational program does not substantially replicate that of the applicant or one of the applicant’s high-performing charter schools ....” § 1002.33(6)(b)3.b.(III), Fla. Stat. The statute explains the requirement as follows:
An applicant is considered to be replicating a high-performing charter school if the proposed school is substantially similar to at least one of the applicant’s high-performing charter schools and the organization or individuals involved in the establishment and operation of the proposed school are significantly involved in the operation of replicated schools.
§ 1002.33(6)(b)3.b., Fla. Stat.
The School Board found that the requirement had not been met because the application submitted by Renaissance sought to open a school for grades K through 8, while the school being replicated served only students in grades 6 through 8. The denial letter explained:
There are fundamental differences in the educational program (i.e., standards-based curriculum, standards-based instruction, standards-based assessments, professional development for teachers and administrators on instructional materials aligned to standards, etc.) between a middle school and an elementary school.
The State Board apparently rejected this reasoning, accepting Renaissance’s argument that a new charter school does not have to “exactly match” the high-performing school upon which it is modeled and the school in this case meets the “substantially replicates” requirement, as the schools shared a substantially similar instruction model and the very same organizations, ie., the very same governing board and ESP.
The Legislature has delegated to the State Board the statutory power to hear an appeal from the denial of a high-performing charter school application. §§ 1002.33(6)(b)3.c. and 1002.33(6)(c)3.b., Fla. Stat. The State Board’s interpretation of the statute is entitled to great deference and this Court is required to defer to the State Board’s interpretation unless it is clearly erroneous. See Verizon Fla., Inc. v. Jacobs, 810 So.2d 906, 908 (Fla.2002) (“An agency’s interpretation of the statute it is charged with enforcing is entitled to great deference.”); Imhotep-Nguzo Saba Charter Sch. v. Dep’t of Educ., 947 So.2d 1279,1285 (Fla. 4th DCA 2007). However, we agree with the School Board that to be “substantially similar” within the meaning of the Florida Statutes, a charter school must have the same characteristics and be alike in substance or essentials to the school it is replicating. Common sense dictates that a middle school, which covers only grades 6 through 8, is materially different from a K through 8 school. As the superintendent noted in his denial letter, “[tjhere is a substantial difference in the curriculum, teaching strategies, student learning rates, discipline, student management, emotional maturity, teaching focus, and other factors between a middle school and an elementary school.”
Moreover, by allowing Renaissance to use a middle school to establish what is essentially two schools, e.g., for which it elsewhere has two charters, and by allowing it to use the elementary portion of the school being replicated (North Broward *76 Elementary) to establish yet another school (this one in Lake County), the State Board is allowing Renaissance to sidestep the limitations imposed by section 1002.331(3)(b), Florida Statutes, which states that “[a] high-performing charter school may not establish more than one charter school within the state under paragraph (a) in any year.” The State Board’s interpretation of the statute essentially doubles the pace at which high-performing charter schools can be replicated within the State.
Renaissance argues that North Broward Academy of Excellence Elementary and Middle Schools are actually one, big K through 8 school, noting that they are housed in the same building and share a website. See http://www.northbroward charter.org. However, as noted by the School Board, these two schools are reported to the Department of Education as separate schools and operate under two separate charters sponsored by the School Board of Broward County. Each of the schools receives separate school grades, as shown by Renaissance in its brief to the School Board. Moreover, Renaissance apparently submitted two separate high-performing applications to two different county school districts in Florida in 2011 based on these schools. These submissions are inconsistent with Renaissance’s current argument that North Broward Elementary and North Broward Middle are “one, big K-8 school.”
Review in this case has been hampered by deficiencies in the underlying statute. The Legislature has indicated a clear preference for encouraging alternative forms of education through the charter school statute. However, the statute as formulated has many shortcomings. The high-performing charter school provisions exemplify these deficiencies. For example, high-performing charter school applications can be denied by the sponsor only if the sponsor demonstrates one of five statutory factors by “clear and convincing” evidence, but the statute does not make clear in what forum a sponsor is to present “clear and convincing evidence” sufficient to deny the application and contains no express provisions for a hearing. § 1002.33(6)(b)3.b., Fla. Stat. The State Board is then required to review the School Board’s decision to determine whether the sponsor has shown, by clear and convincing evidence, one of the five reasons listed for denying the application, but there is no real record for the State Board to review with respect to high-performing charter schools. See § 1002.33(6)(e)3.a., Fla. Stat. This Court’s standard of review is also less than clear. In similar cases, courts normally review the State Board’s decision to determine whether its factual findings are supported by competent, substantial evidence and whether it erroneously interpreted the law. Spiral Tech Elementary Charter Sch. v. Sch. Bd. of Miami-Dade Cnty., 994 So.2d 455, 455 (Fla. 3d DCA 2008) (involving decision to terminate charter school under provision which allowed sponsor to decide not to renew charter, which required sponsor to articulate reasons in writing, and which allowed charter school to appeal to state’s Department of Education). However, high-performing school applications involve a negative — the State Board must find the School Board failed to present clear and convincing evidence to deny the application. This Court’s standard of review thus appears to involve the virtually incomprehensible standard of whether there is competent substantial evidence to support the State Board’s decision that there is an absence of clear and convincing evidence supporting the School Board’s denial of the application. The statute also raises issues of due process by its failure *77 to expressly provide for any form of evi-dentiary hearing or review.
The issues are less pronounced in this case, which involves the State Board’s interpretation of the relevant statute and its requirement that the charter school applicant “substantially replicate” an existing school. We have no difficulty finding in this case that the School Board had before it “clear and convincing” evidence that the requirement had not been met, and that the State Board erred in interpreting the statute to include the replication involved in this case. We find no due process violation within the context of this case, in which no request for a formal hearing was ever made. The Administrative Procedure Act (“APA”) plainly does not apply to proceedings before the State Board and, in view of the time limitation set forth in the statute, it is doubtful that the APA applies to proceedings before individual school boards. See Sch. Bd. of Palm Beach Cnty. v. Survivors Charter Sch., Inc., 3 So.3d 1220 (Fla.2009) (holding that charters schools were not entitled to hearing under APA when school board terminated charter under section 1002.33(8)(d), Florida Statutes; review of the charter school statute which provides for immediate termination of charter under emergency conditions did not require APA hearing that would prolong termination; interpretation was consistent with fact that legislature did not require APA hearing for non-emergency terminations and had set forth detailed statutory procedure). In view of the foregoing, we reverse the order of the State Board approving Renaissance’s application.
REVERSED.
LAWSON and BERGER, JJ., concur.

. An application to open a charter school may be made by an individual, teachers, parents, a group of individuals, a municipality, or a legal entity organized under the laws of Florida § 1002.33(3)(a), Fla. Stat. Charter schools must have a public sponsor — either a district school board or a state university. § 1002.33(5)(a), Fla. Stat. The sponsor must perform a number of duties, including monitoring and reviewing the school and monitoring the revenues of the school. § 1002.33(5)(b), Fla. Stat.