DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SCHOOL BOARD OF INDIAN RIVER COUNTY,**
Appellant,

v.

**SOMERSET ACADEMY, INC.** and **SOMERSET ACADEMY MIDDLE SCHOOL VERO BEACH,**
Appellees.

Nos. 4D16-1227 & 4D16-1228

[ October 4, 2017 ]

Consolidated appeal from the Florida Department of Education; Pam Stewart, Commissioner, DOE Nos. 2015-3257-A-FOI and 2015-3257-B-FOI.

Erin J. O'Leary and Suzanne D'Agresta of Garganese, Weiss & D'Agresta, P.A., Orlando, for appellant.

Jack J. Aiello of Gunster, Yoakley & Stewart, P.A., West Palm Beach, for appellees.

TAYLOR, J.

The School Board of Indian River County ("School Board") appeals from decisions of the Florida State Board of Education ("State Board") that reversed the School Board's denial of two charter school applications filed by Somerset Academy, Inc. ("Somerset"). Both applications were high-performing replication charter school applications. One was for a middle school and the other was for an elementary school. The School Board urges us to reverse the State Board's decisions because clear and convincing evidence supported the School Board's denial of Somerset's applications. The applications, the School Board argues, failed to comply with the statutory requirements for replication of high-performing charter schools. We agree and reverse.[1]

---

[1] We have consolidated both appeals for purposes of this opinion.

In August 2015, Somerset filed two applications with the Indian River School Board to replicate high-performing charter schools it was operating in Miami, pursuant to section 1002.331, Florida Statutes (2015). One application was for Somerset Academy Middle School Vero Beach ("Somerset Middle") and the other for Somerset Academy Vero Beach ("Somerset Academy"). Somerset Middle was purportedly a replication of high-performing Somerset Academy Charter Middle School South Miami Campus, and Somerset Academy was purportedly a replication of high-performing Somerset Academy Elementary School South Miami Campus.

In September 2015, the School Board interviewed members of Somerset's governing board regarding the applications. After the interviews, the Executive Director of Exceptional Student Education and Student Services for the School Board completed an evaluation of each of Somerset's applications. The evaluation was performed using the Florida Charter School Application Evaluation Instrument, pursuant to Florida Administrative Code Rule 6A-6.0786. Both evaluations noted multiple deficiencies with Somerset's applications and resulted in a recommendation that the School Board deny the applications.

The School Board held a business meeting in October 2015 to address Somerset's applications. At the meeting, Somerset representatives spoke and answered questions regarding their applications. School Board members expressed their support for charter schools and interest in having high-performing schools in the Indian River School District. However, they had concerns about deficiencies in Somerset's applications and the applications' failure to meet statutory requirements.

The School Board voted to deny both applications. It issued two separate letters, accompanied by supporting documentation, detailing specific reasons for the School Board's decisions. In sum, the School Board concluded that the applications did not meet the standard for replication under section 1002.33(6)(b)3.b., Florida Statutes (2015), in several ways, including:

(1) Each application failed to demonstrate that it substantially replicated the educational program of Somerset's high-performing charter school that it was intended to replicate, thus failing to meet the requirements of section 1002.33(6)(b)3.b.(III), Florida Statutes.

(2) Each application failed to demonstrate that it complied with all civil rights requirements (including a federal desegregation order under which the School Board must operate its schools),

thus failing to meet the requirement of section 1002.33(6)(b)3.b.(II), Florida Statutes, that a proposed high-performing charter school application materially comply with all applicable state and local health, safety, and civil rights requirements as described in section 1002.33(9)(a)-(f), Florida Statutes.

(3) Each application failed to contain a balanced financial plan and sufficient safeguards regarding internal controls as described in section 1002.33(6)(a)5., Florida Statutes, and therefore, failed to meet the statutory requirements set forth in section 1002.33(6)(b)3.b.(I), Florida Statutes; and

(4) Each application's education plan failed in the following respects:

(A) Failed to "meet the statutory requirement for demonstrating how the school will use the guiding principles and meet the statutorily defined purpose of a charter school as required by section 1002.33(6)(a)1., Florida Statutes."

(B) Failed to "meet the statutory requirement for describing the educational foundation of the school and the teaching and learning strategies that will be employed as required by section 1002.33(7)(a)2., Florida Statutes."

(C) Failed to "meet the statutory requirement for explaining not only *what* the school will teach but also *how* and *why*, as well as proving a detailed curriculum plan that illustrates how students will be provided services to attain the Florida Standards as required by section 1002.33(6)(a)2., Florida Statutes."

(D) Failed to "meet the statutory requirement for describing how the school will address transportation services for its student body as required by section 1002.33(20)(c), Florida Statutes."

In November 2015, Somerset appealed the School Board's decisions to the State Board of Education. After hearing arguments from both sides, the State Board voted to overturn the School Board's decision to deny Somerset's charter school applications and granted both of Somerset's appeals.

On March 3, 2016, in almost identical written opinions issued by Commissioner Pam Stewart, the State Board reversed the School Board's denial of Somerset's applications and set forth its reasons for granting Somerset's appeals. In pertinent part, the opinions stated that the proposed charter schools and the Miami-Dade high-performing schools that Somerset sought to replicate would have the same mission, philosophy of student expectations, code of excellence, requirement for parental commitment, governance, and management. The opinions further noted that the State Board rejected the School Board's arguments regarding the financial management practices, safeguards for internal controls, the sufficiency of the educational plans, and the obligations pursuant to the desegregation order.

The School Board appealed the State Board of Education's decisions.

As a preliminary matter, we reject the School Board's argument that the State Board's final orders should be reversed because they contain findings and conclusions that do not appear to have been approved by the members of the State Board but reflect only the views of Commissioner Pam Stewart, or because nothing in the record of proceedings held before the State Board indicates that the State Board made those findings. Here, the State Board's votes to grant Somerset's appeals occurred during a public meeting where arguments propounded by Somerset were heard, and the State Board's final orders, which were issued by Commissioner Pam Stewart "on behalf of the State Board of Education Chair," reflect the legal arguments advanced by Somerset in in its briefs. *See* § 286.011(1), Fla. Stat. (2015); § 1002.33(6)(c), Fla. Stat. (2015); *Sch. Bd. of Polk Cty. Fla. v. Renaissance Charter Sch., Inc.*, 147 So. 3d 1026, 1028–29 (Fla. 2d DCA 2014) (noting that "[t]he brevity of the State Board's final order frustrates appellate review; however, the statute does not expressly require the State Board to provide findings of fact and conclusions of law").

The standard of review in an appeal from the State Board of Education's decision affirming or denying a high-performing replication charter application has been the subject of two recent Florida district court opinions. In *School Board of Seminole County v. Renaissance Charter School, Inc.,* 113 So. 3d 72, 76 (Fla. 5th DCA 2013), the Fifth District noted that in similar appeals under section 1002.33, Florida Statutes, courts usually review the State Board of Education's decisions to determine "whether its factual findings are supported by competent, substantial evidence and whether it erroneously interpreted the law." The court went on to say:

4

[h]owever, high-performing school applications involve a negative—the State Board must find the School Board failed to present clear and convincing evidence to deny the application. This Court's standard of review thus appears to involve the virtually incomprehensible standard of whether there is competent substantial evidence to support the State Board's decision that there is an absence of clear and convincing evidence supporting the School Board's denial of the application.

*Id.*

In the end, the Fifth District based its holding to reverse the State Board of Education's rejection of the School Board's decision upon its conclusion that the School Board had before it "clear and convincing" evidence that the substantial replication requirement had not been met, and that the State Board erred in finding otherwise. *Id.* at 77. Thus, the court appears to have applied the following standard of review: whether the record is sufficient to demonstrate that the School Board's decision to deny the high-performing replication charter application is supported by clear and convincing evidence.

Similarly, in *School Board of Polk County*, the Second District applied this standard of review in reversing an order of the State Board of Education that overruled the Polk County School Board's decision to deny a high-performing replication charter application. 147 So. 3d at 1029. In holding that "the record is sufficient to demonstrate that the School Board's decision to deny Renaissance's charter application is supported by clear and convincing evidence," the court noted:

It is the School Board's burden to prove by clear and convincing evidence that the high-performing charter school application does not comply with the statutory requirements, including substantial replication. Section 1002.33(6)(b)(3)(b)(III) provides that the School Board may deny the charter application if "[t]he proposed charter school's educational program does not substantially replicate that of the applicant or one of the applicant's high-performing charter schools."

*Id.* at 1028.

We adopt the standard of review in *School Board of Seminole County* and *School Board of Polk County*, and conclude that the record in this case

is sufficient to demonstrate that the School Board's decision to deny Somerset's charter applications is supported by clear and convincing evidence. As shown by the School Board, the Somerset Middle and Somerset Academy applications did not comply with the statutory requirements for replication of a high-performing charter school in that, among other things, they failed to: (1) address the means by which Somerset intends to comply with the requirements of the federal desegregation order under which all public schools in the School District of Indian River County must operate; (2) show that their proposed educational programs substantially replicate those of Somerset's Miami middle and elementary charter schools; (3) show that the proposed Somerset Middle and Somerset Academy are substantially similar to the Miami middle and elementary charter schools; and (4) contain either a balanced financial plan or sufficient safeguards regarding internal controls for the financial management practices.

Clear and convincing evidence has been defined as "evidence that is precise, explicit, lacking in confusion, and of such weight that it produces a firm belief or conviction without hesitation about the matter in issue." *See Standard Jury Instructions—Civil Cases (No. 98-3)*, 720 So. 2d 1077, 1079 (Fla. 1998). Here, the School Board articulated specific objections to the applications submitted by Somerset and provided documents to support their determination that the applications did not materially comply with statutory requirements.

Under section 1002.33(6)(b)3.b., a School Board may deny an application for replication of a high-performing charter school if there is clear and convincing evidence of any of the following deficiencies:

(I) The application does not materially comply with the requirements in paragraph (a);

(II) The charter school proposed in the application does not materially comply with the requirements in paragraphs (9)(a)-(f);

(III) The proposed charter school's educational program does not substantially replicate that of the applicant or one of the applicant's high-performing charter schools;

(IV) The applicant has made a material misrepresentation or false statement or concealed an essential or material fact during the application process; or

> (V) The proposed charter school's educational program and financial management practices do not materially comply with the requirements of this section.

Section 1002.33(6)(b)3.b.(II), Florida Statutes (2015), requires a replication charter application to materially comply with all applicable civil rights requirements, pursuant to sections 1002.33(9)(e), Florida Statutes (2015). Here, that would include complying with the federal desegregation order under which all public schools, including charter schools, in the Indian River School District must operate. Although Somerset stated in its applications that its proposed schools would be open to all students in Indian River County, Somerset failed to sufficiently specify how it would comply with the requirements of the desegregation order to achieve racial balance reflective of the community or otherwise offer a viable student and employee recruitment plan to address the federal desegregation order requirements. For example, the recruitment plans submitted by Somerset failed to address the type of transportation needed to achieve diversity. Further, the School Board received evidence that Somerset had been unable to achieve appropriate demographic balance at the Miami schools.

Despite several outreach strategies outlined in the applications for achieving the racial balances required by the desegregation order, and Somerset's pledged commitment to compliance with the order (given enough time and opportunity), the record sufficiently supports the School Board's finding by clear and convincing evidence that Somerset's applications failed to satisfy this statutory requirement of compliance with civil rights legislation.

The record also contains clear and convincing evidence that the proposed Somerset schools are not substantially similar to the high-performing charter schools that they would purportedly replicate. To be considered "substantially similar" within the meaning of section 1002.33(6)(b)3.b., Florida Statutes (2015), a charter application "must have the same characteristics and be alike in substance or essentials to the school it is replicating." *Sch. Bd. of Seminole Cty.*, 113 So. 3d at 75; *accord Sch. Bd. of Polk Cty. Fla.*, 147 So. 3d at 1027.

In its applications, Somerset alleged that it was modelling the proposed charter schools after the two Miami charter schools that it operated. However, the applications instead indicated that Somerset would be implementing the education program of the Indian River School Board: the School Board's student progression plan, approved instructional materials, curriculum, curriculum pacing guides, code of student conduct, and digital classroom plan. In other words, rather than showing a

substantial replication of the Miami charter schools, the applications proposed to replicate the educational programs of the School Board's traditional schools.  Although Somerset argues that it provided examples of the planned similarities between its proposed schools and the Miami schools, those similarities are not enough to overcome the School Board's reasons for denying the replication applications under section 1002.33(6)(b)3.b., Florida Statutes (2015).  *See Sch. Bd. of Seminole Cty.*, 113 So. 3d at 75 (stating that substantial differences in curriculum, discipline, student management, and teaching focus were enough to reject a replication application).

We next address the School Board's argument that the record contains clear and convincing evidence that the proposed charter schools' educational plans do not comport with the statutory requirements for high-performing charter school replications, as set forth in section 1002.33(7)(a)2., Florida Statutes (2015).  This section explains that the mission and vision of a charter school are the core foundation and primary guiding principles upon which the charter school is based.  It provides, in relevant part, as follows:

> (a) The charter shall address and criteria for approval of the charter shall be based on:
>
>> 1. The school's mission, the students to be served, and the ages and grades to be included.
>>
>> 2. The focus of the curriculum, the instructional methods to be used, any distinctive instructional techniques to be employed, and identification and acquisition of appropriate technologies needed to improve educational and administrative performance which include a means for promoting safe, ethical, and appropriate uses of technology which comply with legal and professional standards.

Specifically, the School Board contends that while the mission and focus of the Miami middle and elementary charter schools are dual language programs, the applications for Somerset's proposed schools in Indian River County do not present the same mission and vision for dual language programs.  Rather, the applications describe world language programs which do not replicate Miami's dual language programs.

The School Board contends that a dual language program is a specifically-defined educational program.  It uses the Miami Dade County School District's description of dual-language programs to provide insight

8

into the dual-language program described by the model Miami schools, and contrasts this with the proposed schools' applications, which refer to cross-cultural issues, bilingualism, and a language program that consists of selecting Spanish or Mandarin as an elective.

According to the Miami Dade School District, a dual-language program distributes instruction between two languages, as seen where the district developed a Bilingual School Organization (BISO) program and an Extended Foreign Language (EFL) program, both of which are aimed toward a 60/40 percent distribution of instruction in English and Spanish, respectively. Thus, the School Board argues that the model schools have a dual-language instruction plan, while the applications for the proposed schools include just a foreign language studies plan.

In many other respects, the School Board demonstrated by clear and convincing evidence that the educational programs set out in Somerset's applications do not replicate the programs of the model Miami schools. Further, in several instances, the language in the applications for the proposed school is generic and does not adequately describe the proposed high-performing replication educational plans.

Finally, we address the School Board's argument that the record contains clear and convincing evidence that Somerset's applications failed to comply with the financial requirements in sections 1002.33(6)(b)3.b.(I) and (6)(a)5., Florida Statutes (2015). Section 1002.33(6)(b)3.b.(I) requires a replication charter school application to include a balanced plan and a description of controls that will safeguard finances as described in section 10202.33(6)(a)5. The School Board painstakingly pointed out how Somerset's applications patently showed that Somerset's intended budget was financially unrealistic and untenable. Furthermore, Somerset's bookkeeping structure allowing educational service providers to approve their own vouchers for payment and to sign checks to themselves failed to adhere to statutory requirements. The applicable statutory provision states as follows:

> (a) A person or entity wishing to open a charter school shall prepare and submit an application on a model application form prepared by the Department of Education which:
>
> . . .
>
> 5. Contains an annual financial plan for each year requested by the charter for operation of the school for up to 5 years. *This plan must contain anticipated fund balances based on revenue projections, a spending plan based on projected*

9

*revenues and expenses, and a description of controls that will safeguard finances and projected enrollment trends.*

§ 1002.33(6)(a)5., Fla. Stat. (2015) (emphasis added).

Although Somerset's applications included projected budgets, the School Board found their figures unworkable in that the calculated salaries for some positions were unrealistic and below market value. Furthermore, Somerset completely failed to account for some job positions in its budget. Additionally, by giving multiple conflicting job roles to the employees for which Somerset budgeted, the financial organization of the proposed schools would be problematic and likely fail to afford the safeguards required by statute.

In sum, the record supports the School Board's finding by clear and convincing evidence that Somerset's applications failed to satisfy more than one statutory requirement for replicating a high-performing charter school. Accordingly, we reverse the orders of the State Board rejecting the School Board's decisions and approving Somerset's applications.

*Reversed.*

MAY and CIKLIN, JJ., concur.

*      *      *

***Not final until disposition of timely filed motion for rehearing.***